THE NEW ENGLAND LOAN AND TRUST COMPANY v.
BENJAMIN SPITLER *et al.*

1. DEED *by Insane Person, Void.* A deed to his homestead made by an insane person and his wife, after he has been duly adjudged insane and placed under guardianship, and a record thereof duly made in the probate court, while he is out on a temporary leave of absence, after having been confined in the insane asylum, is void, and conveys no title to the purchaser.

2. ———— *Void Mortgage.* A mortgagee of the grantee in such deed, having actual notice of such insanity and such adjudication by the probate court, acquires no lien on the land.

3. HOMESTEAD—*Void Mortgage.* A mortgage on the homestead of an insane person, executed by his wife and guardian, without any order of the probate court, is absolutely void.

4. LIEN *for Moneys Advanced.* A person who pays purchase money due from the wife of an insane person to her vendor for a part of the lands included in the homestead, and takes a conveyance of the legal title from such vendor to himself to secure the amount so paid, acquires a valid lien for the money advanced, and he may mortgage the land to a third person to the extent of his interest. The plaintiff in error in this case, having paid off and discharged a mortgage so executed, and also discharged said land from tax liens, to obtain the delivery of a deed conveying the legal title to such wife, is entitled to a lien for the moneys advanced to clear such land from valid and subsisting liens.

## *Error from Miami District Court.*

ON the 8th of February, 1890, Sarah J. Spitler, as guardian of Benjamin Spitler, her husband (a lunatic), and for herself, brought this action in the district court of Miami county against the New England Loan and Trust Company and numerous other defendants, to cancel various deeds, mortgages, leases and contracts affecting the title to certain lands in Miami county, and to quiet the title to said lands in the plaintiff. The case was tried by the court, and the facts specially found. From these findings, it appears that the lands in controversy embraced in the aggregate less than 160 acres of farming land, and had been occupied by the plaintiffs and their children as their homestead for more than 15 years. The land consisted of two contiguous tracts, the title to one of which was vested in Benjamin Spitler on the 15th day of June, 1867. The facts with reference to the title to the other tract are stated in the findings of the court copied below. So much of the findings as are necessary for an understanding of the questions decided are as follows:

" 1. The plaintiffs, Benjamin Spitler and Sarah J. Spitler, are husband and wife, and have been for more than 30 years.

" 2. The plaintiff, Benjamin Spitler, is a lunatic, a person of unsound mind, and has been continuously for more than six years last past a lunatic and of unsound mind, in a state of chronic dementia, and utterly incompetent to transact business, and incapable of contracting."

"4. Upon the 7th day of December, 1884, said Benjamin Spitler was (upon a trial duly and according to law, in the

probate court of Miami county, Kansas) duly and legally found and adjudged to be insane, and a fit person to be sent to the state insane asylum; and the said Benjamin Spitler was, pursuant to said finding and adjudication, thereupon duly committed to the state insane asylum at Osawatomie without delay. Of all of which proceedings a proper record was made in said court, according to law.

"5. Upon the 11th day of September, 1885, John H. Ayers was by the probate court of Miami county, Kansas, duly and legally appointed the guardian of the person and estate of said Benjamin Spitler; and the said John H. Ayers afterward qualified and served as such guardian. Of all which proceedings a proper record was made in said probate court, according to law.

"6. The said John H. Ayers, after he had qualified, and while serving as guardian of the person and estate of said Benjamin Spitler, departed this life; and after the death of the said John H. Ayers, to wit, upon the 31st day of December, 1887, the said Sarah J. Spitler was by said probate court duly appointed the guardian of the person and estate of said Benjamin Spitler, and afterward, upon the 31st day of December, 1887, the said Sarah J. Spitler duly qualified as such guardian. Of all which proceedings a proper record was made in said probate court, according to law."

"8. Upon the 5th day of June, 1884, that portion of the lands mentioned in the petition of the plaintiff as the property of the said Sarah J. Spitler was conveyed by the owners thereof to John H. Ayers, his heirs and assigns, forever, by warranty deed. Said warranty deed was on the 23d day of December, 1884, filed for record in the office of the register of deeds of Miami county, Kansas, and recorded in book 46, at page 334. . . . But the said John H. Ayers (who was the brother of said Sarah J. Spitler) purchased and held said land in trust for the use and benefit of the said Sarah J. Spitler, and to secure himself for money advanced to pay for said land, the purchase price paid for said land being $220, paid by said J. H. Ayers.

"9. After said 44 acres of land had been conveyed to said J. H. Ayers, as stated in finding No. 8, to wit, upon the 14th day of February, 1885, the said John H. Ayers, and Hannah E. Ayers, his wife, executed and delivered to Florence M. Chestnut a mortgage upon said tract of land to secure the payment of a promissory note of even date therewith. Said

promissory note was executed by the said John H. Ayers for money then loaned him by the said Florence M. Chestnut. Said promissory note was for the principal sum of $300, and with interest coupons thereto attached; and said mortgage was, on the 14th day of February, 1885, filed for record in the office of the register of deeds of Miami county, Kansas, and recorded in book X of mortgages, at page 80.

"10. On the 5th day of September, 1887, (after the death of said John H. Ayers,) James Caton and James E. Caton, administrators of the estate of said John H. Ayers, as such administrators, executed and acknowledged, to said Sarah J. Spitler, an administrator's deed for the 44 acres of land mentioned and described in finding No. 8, conveying to her all the interest in said land held by said John H. Ayers at the time of his death. Said deed was executed pursuant to an order of the probate court of Miami county, Kansas, and approved by said court, and was left in the hands of the probate judge, to be delivered to said Sarah J. Spitler or her order, on receipt of the aggregate amount due to said J. H. Ayers's estate to reimburse his expenditures for the purchase of the land described in said deed, which said amount consisted of said sum of $116.40, mentioned in the nineteenth finding herein as being due to said Ayers's estate, and the amount of the mortgage to Florence M. Chestnut, mentioned in said nineteenth finding, as amounting to $329.50, and the agent of the New England Loan and Trust Company paid the whole thereof from the consideration of the mortgages executed and delivered to it by said J. P. McNaughton and his wife, and received and recorded said deed, and said deed was filed for record in the office of the register of deeds of Miami county, Kansas, on the 19th day of March, 1888, and recorded in book 55, at page 1.

"11. On the 12th day of September, 1885, Sarah J. Spitler and John H. Ayers, guardian of Benjamin Spitler, executed and acknowledged and delivered to Alice M. Risdon a mortgage upon the lands of Benjamin Spitler mentioned and described in finding No. 7. Said mortgage was filed for record in the office of the register of deeds of Miami county, Kansas, on the same day it was executed, and was recorded in book Z of mortgages, at page 350. Said mortgage was given to secure the sum of $500, and interest thereon at rate of $8\frac{1}{2}$ per cent. per annum from date, due in five years from the date of said mortgage.

"12. On the 16th day of January, 1888, said Benjamin Spitler and Sarah J. Spitler executed, acknowledged and delivered a deed purporting to convey to the defendant J. P. McNaughton the lands of Benjamin Spitler mentioned and described in finding No. 7. Said deed was afterward, upon the 27th day of February, 1888, filed for record in the office of the register of deeds of Miami county, Kansas, and recorded in book 52, at page 400; and at the same time the said deed was executed, to wit, January 16, 1888, the said Benjamin Spitler and Sarah J. Spitler executed and delivered their written agreement to convey to said J. P. McNaughton the 44 acres of land mentioned in the eighth finding of fact. The consideration for said deed and the written agreement was the assignment by defendant J. P. McNaughton to Sarah J. Spitler of the contract from James Charley and Alforatia Charley to J. P. McNaughton, recited in the petition, and the sum of $400 to be paid in money to the said Sarah J. Spitler by said J. P. McNaughton. Said sum of $400 was not paid at or before the time of the execution and delivery of said deed, nor was any part thereof; but afterward the defendant J. P. McNaughton gave said Sarah J. Spitler two promissory notes signed by himself and payable to Sarah J. Spitler or order, one for $250, and the other for $150; and the said J. P. McNaughton has, since executing said notes, paid to said Sarah J. Spitler the sum of $190.20 and no more; and at the time of the execution and delivery of the said deed, the said Benjamin Spitler was insane, and incompetent to make a contract, and he was at that time absent from the state insane asylum on a temporary leave of absence, and he and his wife, Sarah J. Spitler, and their children, were then occupying as their homestead all the land mentioned in said deed, together with the land of Sarah J. Spitler described in the deed mentioned in finding No. 13.

"13. Upon the 28th day of February, 1888, said Sarah J. Spitler and Benjamin Spitler, her husband, pursuant to said written agreement mentioned in the twelfth finding of fact, executed and acknowledged and delivered to J. P. McNaughton a warranty deed purporting to convey to said J. P. McNaughton the 44 acres of land mentioned and described in finding No. 8, and at the time said deed was executed and delivered the said Benjamin Spitler was insane, and incompetent to make a contract, and was absent from the state insane asylum on a temporary leave of absence, living with his family, and the

said land was a part of the homestead of the said Benjamin Spitler and Sarah J. Spitler. Said deed was afterward, upon the 6th day of March, 1888, filed for record in the office of the register of deeds of Miami county, Kansas, and recorded in book 52, at page 409.

"14. The deeds to J. P. McNaughton mentioned in findings Nos. 12 and 13 were not executed pursuant to any order of the probate court of Miami county, Kansas, neither was either of them, and said deeds were not approved by said court, neither was either of them.

"15. After the execution and delivery of said deeds from Benjamin Spitler and Sarah J. Spitler, his wife, to J. P. McNaughton, the said Benjamin Spitler and Sarah J. Spitler and their children moved to the Peoria reservation, in the Indian Territory, and occupied a rented farm there for two years, but they never occupied the land mentioned in the written instrument copied into the petition and purporting to be subscribed by James Charley and Alforatia Charley; and the land described in said written instrument was the common property of the Peoria tribe of Indians, and the said James Charley and Alforatia Charley, at the time said written instrument was executed, were members of said tribe; but they, and each of them, had no right, title, estate or interest in or to or claim upon the land in said written instrument described, excepting that they were members of the tribe to which said land belonged; neither did they or either of them afterward acquire any right, title, estate or interest in or title to or claim upon said land.

"16. On the 1st day of March, 1888, the defendant J. P. McNaughton, and Clara E. McNaughton, his wife, executed, acknowledged, and delivered to the New England Trust Company, of Kansas City, Mo., a mortgage of that date upon all the lands described in the deeds from Benjamin Spitler and Sarah J. Spitler to J. P. McNaughton, mentioned in findings Nos. 12 and 13. Said mortgage was for the principal sum of $1,700, and 6 per cent. interest thereon from date thereof, payable semiannually, and according to the provisions of a coupon interest note of even date therewith, executed by said J. P. McNaughton and Clara E. McNaughton, in consideration of a loan of $1,700 then made by said New England Trust Company to said J. P. McNaughton and Clara E. McNaughton, with the understanding between them that said company should first apply as

much as necessary of said sum to the payment and satisfaction of all liens, charges and incumbrance of every kind upon said described land and every part thereof, and pay the balance, if any, to said J. P. McNaughton or order, and by the terms of said coupon note and said mortgage securing the same, the said principal sum is to be due six years from the date thereof; but it was provided in said mortgage that in case of a default in the payment of interest or a default in the payment of taxes on the land embraced in the mortgage, the mortgagee, its successors and assigns, might, at their option, declare the principal sum due.  Said mortgage was, on the 10th day of March, 1888, filed for record in the office of the register of deeds of Miami county, Kansas, and recorded in book 4 of mortgages, at page 61."

The seventeenth finding is, that a second mortgage, for $250, was also made by the McNaughtons to the New England Trust Company.

"18.  The defendant, the New England Loan and Trust Company, is the successor of the said New England Trust Company, and virtually the same company, and is now the owner of both the mortgages mentioned in findings Nos. 16 and 17, and no payment whatever has ever been made upon either of them.

"19.  The $1,700 loaned by the said New England Trust Company to J. P. McNaughton and Clara E. McNaughton was paid out by said New England Trust Company as follows:

| | | |
|---|---:|---:|
| To satisfy mortgage of A. M. Risdon, mentioned in finding No. 11 ........................................ | $521 | 25 |
| To county treasurer, to discharge taxes on lands herein described ............................................. | 48 | 29 |
| To Florence Chestnut, to satisfy mortgage mentioned in finding No. 9, being a part of the purchase money and interest due said J. H. Ayers's estate ................... | 329 | 50 |
| To administrators of J. H. Ayers's estate, for expenditures of said Ayers in the purchase and improvement and taxes of said 44 acres, with interest thereon ................. | 116 | 40 |
| To abstracter, for making abstract of all lands herein ...... | 20 | 00 |
| To abstracter, for his expenses to Kansas City in relation to said abstract ............................................. | 3 | 50 |
| To insurance company, for insurance of dwelling of said land, for protection of mortgagee .................... | 4 | 50 |
| To register of deeds, for recording deeds and papers relating to said loan at time of said loan ...................... | 6 | 50 |
| To court and other officers, for certificates regarding the title to said land ...................................... | 2 | 00 |
| To J. P. McNaughton, and on his order, for his personal use, | 648 | 06 |
| Total ................................................. | $1,700 | 00 |

Twenty-three dollars and eighty-eight cents of the amount paid on the account of taxes was paid for back taxes which had been levied before the land was subject to taxation.    Before the said loan of $1,700 was made by the said New England Trust Company to the defendants J. P. McNaughton and Clara E. McNaughton, the said New England Trust Company was notified of the fact that said Benjamin Spitler had been adjudged insane.    The notice was given by the abstracter who prepared the abstract for the loan."

" 26.   Upon the trial herein, the plaintiff, Sarah J. Spitler, produced in court and tendered to the defendant J. P. McNaughton, and offered to return to him, the promissory note for $250 mentioned in finding No. 12, and the written instrument mentioned in the petition and purporting to be executed by James Charley and Alforatia Charley.    The promissory note for $150 mentioned in finding No. 12 had been previously returned to said J. P. McNaughton by said Sarah J. Spitler, and the plaintiff, Sarah J. Spitler, by reason of her poverty, is unable to tender a return of the amount paid her by J. P. McNaughton."

As conclusions of law, the court held that the deeds from the Spitlers to McNaughton were void, and that all subsequent deeds, mortgages and leases to the other parties to the case were also void, and rendered judgment for their cancellation, and for the restoration of the possession of the lands to the plaintiffs.    The New England Loan and Trust Company only is here complaining of the action of the court.

*John C. Hall,* and *John C. Sheridan,* for plaintiff in error:

The deed of a lunatic is only voidable, not void; and where the contract is executed, equity will only relieve against it when the circumstances warrant a finding of fraud.    It is only on the ground of fraud that equity will assume jurisdiction in such cases.  30 Cent. L. J. 239;  Snell, Prin. of Eq., § 393;  11 Am. & Eng. Encyc. of Law, 133;  10 Am. Rep. 740, 744.

Where the parties cannot be placed *in statu quo,* the deed should not be set aside.  Pom. Eq. Jur., § 946 ; 76 Iowa, 633 ; 34 Kas. 8.   And in such case the court would not set

aside the deed unless the consideration had been returned or an offer made to return it. 34 Kas. 8; 55 Am. Rep. 233; 83 Ind. 18; 85 Ill. 296; 43 Mich. 379; 44 Iowa, 229; 1 Gray, 434.

If Spitler's conveyance of this land to McNaughton was the direct result of his insanity, but during the two years intervening before this suit was commenced he recovered his reason at any time, and did not then disaffirm the transaction, but acquiesced, or ratified it, then in such case this action cannot lawfully be maintained.   11 Am. & Eng. Encyc. of Law, 148; 79 Ind. 458; 7 Dana, 96; 45 Mich. 513; 99 Mass. 93; 10 Pet. (U. S.) 64.   But, in any view that may be taken of the case, the New England Loan and Trust Company was clearly entitled, by the law of subrogation, to a lien upon the land for all the money it had advanced and paid in the discharge of prior mortgages, taxes, unpaid purchase money, and in perfecting the title.   51 Kas. 720; 38 id. 26; 24 Am. & Eng. Encyc. of Law, 187, 191, 275, 276; 41 Minn. 417; 51 Iowa, 156; 58 N. H. 380; 71 Mo. 459; 33 Mich. 284; 73 N. Y. 211; 29 Am. Rep. 130; 123 Ind. 160; 51 Conn. 39; 98 Ill. 293; 79 Mo. 174; 143 U. S. 187; 15 Am. & Eng. Encyc. of Law, 837; 9 Pa. St. 498; 52 Kas. 756.   This case is very similar to the one reported in 51 Kas. 720.

*Sperry Baker*, for defendant in error Sarah J. Spitler:

The deeds from Benjamin Spitler and Sarah J. Spitler and the contract for the deed to the 44 acres were void. *Ott v. Sprague*, 27 Kas. 620; *Jenkins v. Simmons*, 37 id. 496; *Thimes v. Stumpff*, 33 id. 53; *Dexter v. Hall*, 15 Wall. 9.

"As a general rule, the contract of a lunatic is void *per se.* The concurring assent of two minds is wanting.   They who have no mind cannot concur in mind with one another; and as this is the essence of a contract, they cannot enter into a contract." *Gribben v. Maxwell*, 34 Kas. 8; 1 Pars. Contr. (6th ed.) 383; *Powell v. Powell*, 18 Kas. 371.

An insane person cannot consent to the alienation of the homestead, either in person or by guardian.

"Besides, could the homestead be sold without the joint consent of the husband and wife? Const., art. 15, § 9. The husband has not consented, and when the wife is restored to sanity, as she may be, she may claim that she has never consented." *Birdzell v. Birdzell*, 33 Kas. 437, 438.

Knowledge of facts sufficient to excite the suspicions of a prudent man, and put him upon inquiry, is as a general proposition equivalent to knowledge of the ultimate fact. *Phillips v. Reitz*, 16 Kas. 401; *Garaby v. Bailey*, 25 Tex. Supp. 294; *Pitney v. Leonard*, 1 Paige, Ch. 461; 4 Kent, Comm. 179; *Kurtz v. Miller*, 26 Kas. 319.

But the evidence and the findings in this case go beyond mere imputed notice, and show that the New England Trust Company had actual notice that McNaughton had no title.

In the case of *Gribben v. Maxwell*, 34 Kas. 8, cited by counsel for plaintiff in error, the homestead was not involved, and the deed had been taken in perfect good faith before an inquisition of lunacy, for a sufficient consideration, without knowledge of the lunacy, and no advantage taken. And that case is only in point as stating the general rule that "The contract of a lunatic is void *per se.*" And the case of *Leavitt v. Files*, 38 Kas. 26, simply affirms the doctrine of *Gribben v. Maxwell*, supra. The property involved was not a homestead. And the case of *Myers v. Knabe*, 51 Kas. 720, 722, follows the other two cases and affirms the same doctrine.

The doctrine of subrogation has no application to the case. See *Mather v. Jenswold*, 32 N. W. Rep. 512; *Loan Association v. Scott*, 53 id. 283; Anderson's Law Dict., title "Subrogee;" Jones, Mort., 3d ed., §.874*a*; *Gans v. Thieme*, 93 N. Y. 532; *Ætna Ins. Co. v. Town of Middleport*, 8 Sup. Ct. Rep. 625 (124 U. S. 534).

The opinion of the court was delivered by

ALLEN, J.: The facts of this case are essentially different from those in either of the cases heretofore decided by this court, cited in the brief of counsel for plaintiff in error. In this case, it appears not only that the plaintiff was insane at

the time of making the deeds to McNaughton, but that he had been duly adjudged insane by the probate court, and a guardian of his person and estate appointed. These facts appeared of record in the office of the probate judge. Benjamin Spitler had been confined in the insane asylum, but was then out on a temporary leave of absence. There is nothing in the findings indicating that McNaughton acted in good faith, or in ignorance of Spitler's mental condition. Under these circumstances, the court rightly held that the deeds to McNaughton were void. (*Gribben v. Maxwell,* 34 Kas. 8; *Powell v. Powell,* 18 id. 371; 1 Pars. Contr. 383.)

The New England Loan and Trust Company having had actual notice before making the loan to McNaughton, through the abstracter who prepared the abstract on which the loan was made, of the fact of Spitler's insanity, acquired no greater right through McNaughton than he himself had. It follows, then, that the mortgages of the plaintiff in error are also void.

The only question remaining in the case is, whether the plaintiff is entitled to subrogation to the rights of the holders of any of the liens which were paid by it out of the loan made to McNaughton.

As to the alleged mortgage to Alice M. Risdon: From the eleventh finding it appears that this instrument was executed on September 12, 1885, by Sarah J. Spitler and John H. Ayers, guardian of Benjamin Spitler. There is nothing in the record showing any authority in Ayers, as guardian, to execute this mortgage. It is apparent that it created no lien on the land, and the subrogation of the plaintiff to the rights of Alice M. Risdon is a subrogation to no right as against the plaintiff.

The mortgage of Florence Chestnut holds a different position. From the eighth, ninth and tenth findings it appears that in June, 1884, the legal title to the 44 acres was not vested in either of the Spitlers; that John H. Ayers, who was the brother of Sarah J. Spitler, paid $220, the amount of purchase money due the holders of the legal title, and took the conveyance to himself to hold as security for the purchase

money advanced.   By this transaction he acquired the same
right to the purchase money paid that the former owner had.
Afterwards, on the 14th day of February, 1885, he executed
a mortgage to Florence M. Chestnut for $300 and interest.
Benjamin Spitler being then insane, and the land a part of
the homestead of the Spitlers, and the equitable title of the
land being in Sarah J. Spitler, subject only to Ayers's claim
for the purchase money, Ayers had no right to mortgage any-
thing more than his interest in the land.   But he had a right
to mortgage that interest, and the mortgage executed to Flor-
ence M. Chestnut was a good and valid mortgage to the ex-
tent of the amount of purchase money due him.   The legal
title in the 44 acres of land remained in Ayers until his death.
It never was vested in Sarah J. Spitler until conveyed to her
by the administrators of the estate of John H. Ayers by order
of the probate court.   To obtain a delivery of this deed so as
to vest the legal title in Sarah J. Spitler, the New England
Loan and Trust Company paid the amount of the mortgage to
Florence M. Chestnut, as well as the sum of $116.40 claimed
to be due Ayers for expenditures in the purchase and im-
provement of and taxes on said land.   This payment resulted
directly to the benefit of the Spitlers — it vested in them the
legal title to the 44 acres of land.   It seems to us equitable
that they should be subrogated to the right of Ayers to re-
tain a lien on this tract for the amount of purchase money
included in the payments to Florence M. Chestnut and the
administrators of Ayers's estate, with interest from the time
the money was advanced by Ayers.   For the protection of
his security, Ayers, and those deriving their rights through
him, had a right to discharge tax liens on this land, and the
land remains as security for them.

We think the court should have found a valid lien on 44
acres in favor of the loan company, for the amount of the
purchase money and of the taxes paid, which were a valid
and legal charge on said tract.   In this connection we might
say, that neither Ayers nor his administrators could hold the
land as security for a general balance of accounts.   We are

unable to determine from the findings whether the whole amount due Ayers's estate included any other items than the purchase money and taxes paid by him; but we infer that it does, from the statement that it was for improvements as well as taxes and purchase money. The items stated in the nineteenth finding as paid out for expenses of the loan are none of them properly chargeable against the land.

The judgment will be modified by awarding the plaintiff in error a lien on the 44 acres of land belonging to Sarah J. Spitler for the $220 of purchase money and interest, and valid taxes thereon paid by the plaintiff in error, with interest. In all other respects the judgment will be affirmed.

All the Justices concurring.