No. 22,954.

·CARL PETERSEN, *Appellee, v.* EARL W. SKIDMORE et al.
(R. E. IVES et al., *Appellants.*)

SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Interferes with Homestead Rights and Possession.* An oil and gas lease on a homestead giving the right to lay pipe lines and to build tanks, power stations, and structures thereon, interferes with the homestead rights and possession.

2. SAME—*On Homestead—Must Have Joint Consent of Husband and Wife.* To give a valid oil and gas lease on a homestead, the husband and wife must give their joint consent thereto.

3. SAME—*On Homestead—Wife in Insane Asylum—Lease Void.* An oil and gas lease on a homestead is void where the lease is given by the owner whose wife had been adjudged insane and was confined in a state hospital for the insane at the time.

4. SAME—*Husband Accepting a Money Rental on Lease—Not Estopped from Bringing Action to Cancel Void Lease.* A husband is not estopped by accepting a money consideration for a lease, nor by accepting a money rental thereon, from prosecuting an action to cancel the lease where the lessee knew at the time he took it that the land was the homestead of the owner and his wife and that the wife had been adjudged insane and was then confined in a state hospital for the insane.

Appeal from Marion district court; Roswell L. King, judge. Opinion filed February 12, 1921.   Affirmed.

*J. G. Egan,* of Topeka, *John Madden, C. E. Cooper, John Madden, jr.,* and *C. B. Dunn,* all of Wichita, for the appellants.

*Braden C. Johnston,* of Marion, for the appellee.

The opinion of the court was delivered by

Marshall, J.: This is an appeal from a judgment cancelling an oil and gas lease.   Earl W. Skidmore filed a disclaimer. The other defendants resisted and appeal.   The action was tried on the following agreed statement of facts:

"It is agreed that the West Half (W ½) of the Southeast Quarter (S. E. ¼) of Section Two (2), Township Twenty-two (22), Range Four (4), East of the Sixth Principal Meridian was owned by the plaintiff, Carl Petersen, on the 2d day of August, 1917. That at said time Carl Petersen was a married man, and resided upon the said land and owned no other real estate.   That some time prior to 1917 and about 1903 his wife, Lena Petersen, was adjudged by the Probate Court of Marion county, Kansas, insane and confined in the insane asylum of the state of Kansas, and that she was such wife at the time of the execution of said lease on the 2d day of August, 1917, and that said land was the family homestead.   That on that date Carl Petersen executed a lease to Earl W. Skidmore, that both said Skidmore and said Petersen at said time knew that said real estate was the homestead of Petersen, and that his wife was insane and confined in the asylum and could not execute the said lease.   That said lease was afterwards assigned to the defendants, as set forth in the petition, and that at the time of the bringing of this suit Earl W. Skidmore had no interest in said lease and filed a disclaimer of any interest in this action.   That said Earl W. Skidmore had paid to the said Carl Petersen the sum of $320 bonus, which was a fair and reasonable bonus at that time.

"That on or before the 2d day of August, 1917, Carl Petersen accepted from the defendants named in the petition, other than Earl W. Skidmore, the sum of $80 as rental, being $1.00 an acre, as was intended by the parties in said lease.   That on the 26th day of July, 1919, the defendants, except Earl W. Skidmore, paid into the Marion County State Bank at Florence, the sum of $80, being $1.00 an acre rental for said land, to be placed to the credit of Carl Petersen in accordance with the terms of the lease, which sum the said plaintiff refused to accept.

"That in the execution of said lease there was no fraud practised by any of the parties.   The lease was made in good faith and accepted in good faith.   That the said Lena Petersen, wife of the plaintiff, never at any time assented to the making of the lease or consented thereto and knew nothing thereof nor was she in a mental condition to so do."

1. The appellants argue that the lease did not interfere with the homestead rights of the plaintiff's wife, and for that reason her consent to the lease was not necessary. A number of authorities are cited in which this court has described the interests transferred or conveyed by an oil and gas lease. Those authorities do not control for the reason that the right, interest, or estate given by the lease in question necessarily interfered with rights in and the possession of the homestead. The lease recites—

"That the said party of the first party . . . has granted, demised, leased, and let and by these presents does grant demise, lease and let unto the said second party his heirs, executors, administrators, successors, or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations and structures thereon to produce and take care of said products, all that certain ·tract of land situated in the County of Marion, State of Kansas, described as follows, to-wit: . . ."

Pipe lines cannot be laid, and neither can tanks, power stations and structures to take care of oil produced be built without interfering with the possession of at least a part of the homestead, and possibly with all of it. Although the lease recites that pipe lines shall be buried below plow depth and that "no well shall be drilled nearer than 200 feet to the house or barn on said premises," yet, to fully and effectively operate the lease, it might become necessary to occupy the entire tract of land with buildings and thus necessarily interfere with the occupation of the premises as a homestead.

2. Was it necessary that the wife of the plaintiff sign the lease with him in order to make it binding on him? In *Land Co. v. Gas Co.*, 43 Kan. 518, 23 Pac. 630, this court said:

"Joint consent of husband and wife is necessary to give validity to a lease of a homestead, when such lease interferes with the occupancy and use of the homestead by the wife.

"A lease of a homestead for a period of twenty-five years, with privilege of prospecting for gas, coal, oil, and other minerals, upon any or all portions of said homestead, at the pleasure of the lessee, and to erect derricks, engine houses, and buildings for storage purposes, if needed, may interfere with the use and occupancy of the homestead by the wife, and therefore requires joint consent of husband and wife to give it validity." (Syl.)

That case was followed in *Palmer v. Parish*, 61 Kan. 311, 315, 59 Pac. 640, and the rule was adhered to in *Thompson v.*

*Millikin,* 93 Kan. 72, 143 Pac. 430; *id.* 102 Kan. 717, 172 Pac. 534. (See, also, 13 R. C. L. 636; 21 Cyc. 535; 1 Thornton, Law of Oil and Gas, 3d ed., § 291.) To have made a valid lease, it was necessary for the wife of the plaintiff to consent to it.

3. The plaintiff's wife could not sign the lease, nor give her consent thereto, because she was insane at the time it was signed. In *Loan Co. v. Spitler,* 54 Kan. 560, 38 Pac. 799, this language is found:

"A deed to his homestead made by an insane person and his wife, after he has been duly adjudged insane and placed under guardianship, and a record thereof duly made in the probate court, while he is out on a temporary leave of absence, after having been confined in the insane asylum, is void, and conveys no title to the purchaser.

"A mortgagee of the grantee in such deed, having actual notice of such insanity and such adjudication by the probate court, acquires no lien on the land.

"A mortgage on the homestead of an insane person, executed by his wife and guardian, without any order of the probate court, is absolutely void." (Syl. ¶¶ 1, 2, 3.)

These rules were followed in *State Bank v. Norduft,* 2 Kan. App. 55, 60, a case that arose over a mortgage given on exempt personal property. (See, also, Note, 13 L. R. A., n. s., 430.) The lease signed by the plaintiff was void.

4. It is urged that the plaintiff cannot maintain this action for the reason that he is estopped by the fact that he received $320 on the execution of the lease and has since accepted rentals under it. The estoppel is not good for two reasons. One is, that Earl W. Skidmore, the lessee, at the time the lease was taken by him, knew that the plaintiff's wife was insane, that she was then confined in a state hospital for the insane, and that the land was the homestead of the plaintiff and his wife. In *Ergenbright v. Henderson,* 72 Kan. 29, 82 Pac. 524, it was said:

"A party pleading an estoppel *in pais* must show: (1) That the opposing party has made some representation inconsistent with his present position, with the intent to mislead the pleader; (2) that the representation so made was known by the maker to be false; (3) that the pleader did not know that the representation was false; (4) that he believed it to be true, and acted upon such belief." (Syl. ¶ 1.)

(See, also, *Clark v. Coolidge,* 8 Kan. 189; *Debenture Co. v. Hopkins,* 63 Kan. 678, 66 Pac. 1015; *Gray v. Zellmer,* 66 Kan.

514, 72 Pac. 228; *Schott v. Linscott,* 80 Kan. 536, 539, 103 Pac. 997.)

The other reason is, that if the void lease cannot be set aside by the plaintiff, the constitutional and statutory provisions concerning the alienation of homesteads may be avoided through the execution by one of the spouses of a void instrument and by his acceptance of money under it. Skidmore and his assigns, the other defendants, paid their money with full knowledge of all conditions, and the plaintiff is not estopped from prosecuting this action. (*Thimes v. Stumpff,* 33 Kan. 53, 5 Pac. 431; *Thompson v. Millikin,* 93 Kan. 72, 143 Pac. 430; *id.* 102 Kan. 717, 172 Pac. 534.)

The appellants ask that the lease be reformed. The agreed statement of facts does not contain anything to show why it should be reformed or to justify its reformation. Besides, reformation after cancellation is useless.

The judgment is affirmed.