No. 23,367.

HESTER A. ILES, as an Individual and as Guardian of J. A. ILES, an Insane Person, *Appellants*, v. E. R. BENEDICT, *Appellee.*

SYLLABUS BY THE COURT:

SPECIFIC PERFORMANCE—*Sale of Homestead—Insanity of Husband at Time of Conveyance—No Joint Consent to Convey Homestead.* A contract for the sale of a homestead upon compliance with certain conditions was executed by both husband and wife, but before compliance with the conditions or the execution of a conveyance of a homestead, the husband was adjudged insane. The wife was appointed as guardian of the person and estate of her husband, and after obtaining authority from the probate court executed a deed for the conveyance of the homestead for herself, and also one as guardian for her husband, and tendered these to the purchaser as a compliance with the contract. The purchaser deemed the conveyances insufficient, and refused to accept the deeds and pay for the land. *Held,* that there was not the necessary joint consent to make an effective conveyance of the homestead and that specific performance of the contract was rightly refused.

Appeal from Bourbon district court; EDWARD C. GATES, judge. Opinion filed January 7, 1922. Affirmed.

*Hubert Lardner, John C. Cannon,* and *James G. Sheppard,* all of Fort Scott, for the appellants.
*A. M. Keene,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The refusal of the court to adjudge specific performance of a contract for a sale of land has been brought up for review.

The defendant, who was the purchaser of the tract, declined performance because of the alleged inability of the plaintiff to convey a good title to the land. The title to the tract stood in the name of Hester A. Iles, and she and her husband, James A. Iles, occupied it as their homestead at the time the contract of sale to E. R. Benedict, the defendant, was made. A payment of $1,000 of the purchase

price was made when the contract was executed, and nine days thereafter James A. Iles was adjudged insane, and has since been confined in the state hospital for the insane. When defendant asked for a deed he was informed that Mrs. Iles was unable to convey the land until authority for that purpose had been obtained from the probate judge, and that the authority to convey could not be obtained in less than two or three months. Later the probate judge appointed Mrs. Iles as guardian of her husband and at the same time authorized her to convey the land and complete the contract with the defendant. Subsequently she executed a deed purporting to convey her interest, and at the same time another deed which she executed as guardian of her husband, and when these were tendered to the defendant he refused to carry out the contract on the ground that the instruments were insufficient to express a joint consent necessary to the alienation of the homestead and to make a valid conveyance.

The refusal to decree specific performance must be upheld. A purchaser of land cannot be compelled to accept a doubtful title to it which will expose him to litigation or one which he may be compelled to defend in the courts on some reasonably debatable grounds. The title proposed to be conveyed to the defendant was more than doubtful, it was absolutely defective. As the property was a homestead and continued to be a homestead until after the husband of the plaintiff had been adjudged insane, there was no possibility of gaining joint consent of husband and wife. Joint consent is essential to a valid conveyance of a homestead. (Const., art. 15, § 9.) The constitutional provision is to be strictly enforced, and so it has been held that separate conveyances by the husband and wife of a homestead did not constitute a good conveyance. (*Ott v. Sprague,* 27 Kan. 620.) It has been said that—

"It is familiar law that the homestead can·be alienated only by the joint consent of the husband and wife and while such consent need not always be in writing, (citing cases) it must always be joint and simultaneous." (*Bank v. Duncan,* 87 Kan. 610, 613, 125 Pac. 76.)

It is true that a contract for the sale of the land had been made which provided for a conveyance upon the performance of certain conditions before the husband became insane, but he had been adjudged insane before the conditions were performed or the time had arrived to determine whether a conveyance should be executed. He was then incompetent to decide that the defendant was entitled

to a conveyance or to consent that a conveyance of the homestead should be executed. There must be joint consent when the conveyance is made. The statute has provided for the disposition of the property of an insane person by the guardian, but the homestead is expressly excepted from the operation of these provisions. (Gen. Stat. 1915, § 6118.) That an insane wife or husband cannot give the necessary consent for the mortgage or conveyance of a homestead has been before the court and definitely decided. In *Loan Co. v. Spitler*, 54 Kan. 560, 38 Pac. 799, a deed to a homestead was made by a husband who had been adjudged insane while he was out of the asylum on a temporary leave of absence, his wife joining in the conveyance. It was held that the instrument did not transfer title but was absolutely void. In *Adams v. Gilbert*, 67 Kan. 273, it was decided that "a deed to a homestead made by a husband and the guardian of his insane wife is ineffectual as a muniment of title, and conveys nothing so long as the property remains a homestead." (Syl. ¶ 1.) In another case where a homestead was occupied by a husband and wife with their children, the wife was adjudged insane, and while confined in an asylum the husband was convicted of a felony and imprisoned in the state penitentiary for a term of years. He had given a power of attorney to another, and the same person was also appointed guardian of the insane wife. This agent and guardian placed the children in the care of others, and later obtained from the probate court an order authorizing the sale of the property. He sold and made a guardian's deed attempting to convey the wife's undivided one-half interest in the homestead, and also, under his power of attorney, undertook to convey the husband's interest. It was held that the attempted alienation of the homestead during the lifetime of the wife, while she continued insane, was without effect, and that the husband, upon being pardoned and returning to his home, was entitled to reclaim the homestead. (*Withers v. Love*, 72 Kan. 140, 83 Pac. 204.)

It has been held in *Locke v. Redmond*, 6 Kan. App. 76, affirmed in 59 Kan. 773, that a mortgage upon a homestead executed by a husband in his individual capacity and as guardian for his insane wife was without validity for the reason that the consent of the insane wife cannot be supplied by a guardian.

It must be held that the deeds executed by the plaintiff were without validity, and that the court held correctly in refusing to enforce specific performance of the contract.

The judgment is affirmed.