# Nolen *v.* East.

*Bill for an Accounting and Cancellation.*

(Decided February 13, 1913. 61 South. 261.)

1. *Homestead; Nature of Estate or Right.*—The purpose of the constitutional homestead exemption is the protection of the dwelling place, and while usually a homestead is accompanied by an interest or estate, there is no limitation to any particular estate as to quality, extent or duration.

2. *Same; Transfer of; Requisites.*—Where a married man was in possession under bond for title, and made an agreement with a third person to pay the balance of the purchase money, such third person to take a deed for the land with an agreement to convey to the purchaser in possession on repayment of the loan, such agreement could not operate as a conveyance or assignment of the purchaser's homestead interest, although he may have had only an equitable title to same.

3. *Same; Action to Protect; Offer to Do Equity.*—Where a purchaser under bond for title in possession procures a third person to pay the balance of the purchase price, taking a deed to himself with agreement to convey to the purchaser on repayment of the money advanced, and the purchaser under bond for title offers to pay such person all the money advanced by him for the payment of the purchase price, the offer to do equity is sufficient and entitles the purchaser to a conveyance from such third person.

APPEAL from Tallapoosa Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by R. F. East against I. N. Nolen to declare a deed a mortgage, for an accounting and a cancellation on payment of the amount found due, and to call in and cancel a deed from Dunnaway to Nolen, and require Nolen to execute a deed conveying the land to ora-

[Nolen v. East.]

tor. Decree for complainant, and respondent appeals. Affirmed.

Orator relies upon the following facts: In the year 1902 he contracted with Dunaway to purchase a tract of land from said Dunnaway, which is described, the consideration being $600, with interest. That, while the notes which he executed to Dunnaway were in the form of rent notes, it was agreed between the parties that, on payment of the notes in full, the said Dunnaway would execute to orator a deed, conveying to him said lands, and it was so stipulated, and said Dunnaway bound himself to do so by a bond for title. That orator went into possession, and still resides on the land, and has made payment on the notes from time to time, having paid about $400. That the notes were transferred to Bass and Heard, who were demanding payment, and that orator went to Nolen, and requested a loan of money sufficient to pay the notes, offering a mortgage on said land as security, and the said Nolen agreed to let him have the money, and that, when he, Nolen, and Dunnaway met to close the matter up by having Dunnaway execute a deed to the land, said Nolen stated that he would prefer to have a deed to the land from said Dunnaway, instead of taking a mortgage, and that, after some discussion, orator agreed, and the said Nolen agreed, that when orator repaid the money with interest, he would make orator a deed to said land, and that in accordance with said agreement Dunnaway executed a deed to Nolen for the land, and said Nolen paid Dunnaway the balance of the purchase money, with interest, after orator had paid an additional sum of $50 thereon to what orator had formerly paid. It is then alleged that in 1909 orator paid Nolen $122 as part of the purchase money as agreed, and that he is entitled to a credit of that much on his indebtedness to

Nolen. It is then alleged that Nolen was claiming that he is the owner of the land, and that orator is a tenant, and is seeking to compel orator to pay rent. It is then alleged that at the time of the said transaction in which the deed was made Nolen, that orator was living on the land with his family and occupying it as a homestead, and has been ever since he contracted to purchase it from Dunnaway, and that he has made valuable improvements thereon, and has offered, and is now ready, to pay Nolen the balance due thereon.

RIDDLE, ELLIS, RIDDLE & PRUET, for appellant. The bill was demurrable because it fails to show a debt due from East to Nolen which Nolen could enforce.—*Turner v. Wilkerson*, 72 Ala. 361. It must appear by clear and convincing evidence that the conveyance was intended to operate only as a security for the debt.—*Turner v. Wilkerson, supra.*

JAMES W. STROTHER, for appellee. The bill undoubtedly contains equity and if supported by the evidence entitles complainant to relief.—*Palmer v. Palmer,* 88 Ala. 545; *Hughes v. McKenzie,* 101 Ala. 415; *Daniels v. Lowery,* 92 Ala. 519; *Rose v. Gandy,* 137 Ala. 329. The complainant could not make a valid conveyance of his homestead without the proper execution by the wife, and this is true whether the character of the estate be legal or equitable, in fee simple or for life.—*Watts v. Gordon,* 65 Ala. 546; *Tyler v. Jewett,* 82 Ala. 93; *Griffin v. Chattanooga Southern,* 127 Ala. 570; *Winston v. Hodges,* 102 Ala. 304. There was sufficient offer to do equity.

ANDERSON, J.—As has been several times observed by this court in discussing the homestead exemption:

"The great controlling purpose and policy of the Constitution is the protection, the preservation of the homestead—the dwelling place—the roof that shelters. The Constitution and statutes protect it from liability to the payment of debts, and, when the owner is a married man, subject to the restrained alienation.   *   *   * Usually it is accompanied by an estate or interest; but, if it is not, it is the misfortune of the occupant."—*Griffin v. Chattanooga R. R. Co.,* 127 Ala. 572, 30 South. 524, 85 Am. St. Rep. 143; *Watts. v. Gordon,* 65 Ala. 546. "There is no limitation to any particular estate, either as to duration, quality, or extent. It is the land upon which the dwelling place of the family is located, used, and occupied as a home which the Constitution and statute protects, however inferior may be the title, or limited the estate or interest."—*Tyler v. Jewett,* 82 Ala. 93, 2 South. 905; *Bailey v. Dunlap Co.,* 138 Ala. 415, 35 South. 451.

It may be true, that Dunnaway, the vendor, who gave the complainant a bond for title, had the legal title to the land when he conveyed the same to the respondent Nolen, and that Nolen, not only paid the balance of the purchase money due from the complainant East to Dunnaway, but did so at the request of the said East; still East was in the possession of the land as a homestead with an equitable title or claim, under his purchase from Dunnaway, and, as he was a married man, he could only convey his interest in said homestead as is required by law. Therefore the arrangement between the complainant and the respondent by which Nolen was to pay Dunnaway and take a deed for the land, whether it was intended that Nolen was to get a conditional or unconditional title to the land, could not and did not operate as a conveyance or assignment of the

complainant's homestead, notwithstanding he may have had only an equitable title to same.

Whether Nolen did or did not acquire the vendor's lien of Dunnaway upon paying the purchase money due him at the request of the vendee, East *(Scott v. Land Co.,* 127 Ala. 165, 28 South. 709; *Chapman v. Abrahams,* 61 Ala. 108; *Pettus v. McKinney,* 74 Ala. 108), matters not, as the said Nolen has the legal title to the land which cannot be divested except by a court of equity, and he who seeks equity must do equity. The rule is analogous which governs when a mortgagor seeks to redeem.—*Tyler v. Jewett, supra.* The complainant has brought himself within the requirement of this just and equitable rule by offering to pay the respondent all that he paid Dunnaway in the way of purchase money due upon the land.

The decree of the chancery court is affirmed.

Affirmed.

DOWDELL, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.

