157 So. 670

## LAZENBY v. LAZENBY.
### 5 Div. 190.

Supreme Court of Alabama.
Nov. 22, 1934.

C. T. Reneau, of Wetumpka, for appellant.

Holley & Milner and P. K. Shirley, all of Wetumpka, for appellee.

KNIGHT, Justice.

Appeal from an interlocutory decree of the circuit court of Elmore county, in equity, overruling demurrers of respondent, appellant, to the bill of complaint.

It appears from the averments of the bill that appellant and appellee are husband and wife; that the hand of affliction has been laid upon the wife, that she is insane and now confined in the "Alabama State Hospital for the Insane at Tuscaloosa, Alabama." Wheth-

er the appellant is incurably insane does not appear from the bill. But whether so or not can exert no influence in reaching a proper decision in the case.

It also appears that, while Mrs. Lazenby was in her proper mind, she, along with her husband, executed a mortgage upon certain lands, which constituted their homestead. This mortgage is still unpaid, and the holder is threatening to foreclose the same. The mortgage includes other lands owned by the husband.

It is averred that the complainant will be unable to refinance the indebtedness unless the homestead is included in the mortgages, which he purposes to execute to the Federal Land Bank of New Orleans and to the Land Bank Commissioner. It appears that it is the purpose of the complainant to. mortgage all the designated lands owned by him, some 1,750 acres, and that the tract includes land constituting the homestead of the parties. It appears that the amount of the indebtedness of the complainant, which is secured by a mortgage upon the homestead, as well as other lands of complainant, is the sum of $4,000. It also appears that complainant's purpose is to incumber the homestead, along with other lands, in the aggregate sum of $11,600.

The bill contains many averments to the effect that it is to the best interest of the insane respondent that the court should authorize the complainant, or some other person appointed by the court, to execute refinancing mortgages, or should authorize the execution of the mortgages "without respondent's joining in the execution of the same." It is further averred that, unless this is done, "complainant's and respondent's rights and interests in said lands, including the homestead, will be forever lost due to his (complainant's) inability to raise the money whereby to discharge said encumbrances." Prayer accordingly.

While the condition of complainant, as appears from his bill, is extremely unfortunate, and while the facts averred appeal greatly to our sympathy, yet, as we see it, his bill is without the semblance of equity, and the relief prayed for must be denied.

Section 2, article 14, of the Constitution of 1868, provides: "Every homestead, not exceeding eighty acres of land, and the dwelling and appurtenances thereon, to be selected by the owner thereof, and not in any town, city, or village, or in lieu thereof, at the option of the owner, any lot in the city, town, or village, with the dwelling and appurtenances thereon, owned and occupied by any resi-

dent of this state, and not exceeding the value of two thousand dollars, shall be exempted from sale, on execution, or any other final process from a court, from any debt contracted after the adoption of this constitution. Such exemption, however, shall not extend to any mortgage lawfully obtained, but such mortgage or other alienation of such homestead, by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife of the same."

This provision, with reference to homestead exemptions, new to the Constitution of 1868, was carried without change into the Constitution of 1875, being there designated as section 2 of article 14, and the identical provision appears in the Constitution of 1901, as section 205.

Since the year 1868, when the above provision of the Constitution was adopted, protecting the wife against the alienation of the homestead by the husband, without her voluntary signature and assent to the same, we have uniformly held that a mortgage, or other conveyance of the homestead, without the voluntary signature and assent of the wife, is absolutely void, and inoperative for any purpose. Miller v. Marx, 55 Ala. 322; Pettus v. McKinney, 56 Ala. 41; McGuire v. Van Pelt, 55 Ala. 344; Balkum v. Wood, 58 Ala. 642; Halso v. Seawright, 65 Ala. 431; Seaman v. Nolen, 68 Ala. 463; Slaughter v. McBride, 69 Ala. 510; De Graffenried v. Clark, 75 Ala. 425; Alford v. Lehman, Durr. & Co., 76 Ala. 526; Watson v. Mancill; 76 Ala. 600; Crim v. Nelms, 78 Ala. 604; Strauss v. Harrison, 79 Ala. 324; Moses v. McClain, 82 Ala. 370, 2 So. 741; Smith v. Pearce, 85 Ala. 264, 4 So. 616, 7 Am. St. Rep. 44; Cox v. Holcomb, 87 Ala. 589, 6 So. 309, 13 Am. St. Rep. 79; Griffith v. Ventress, 91 Ala. 366, 8 So. 312, 24 Am. St. Rep. 918; Hodges v. Winston, 95 Ala. 514, 11 So. 200, 36 Am. St. Rep. 241; Woodstock Iron Co. v. Richardson, 94 Ala. 629, 10 So. 144; Parks v. Barnett, 104 Ala. 438, 16 So. 136; Wallace v. Feibelman, 179 Ala. 589, 60 So. 290; Nolen v. East, 181 Ala. 226, 61 So. 261; Reid v. Allen, 183 Ala. 582, 62 So. 801; Gilley v. Denman, 185 Ala. 561, 64 So. 97; Deramus v. Deramus, 204 Ala. 144, 85 So. 397; People's Bank v. Barrow & Wiggins, 208 Ala. 433, 94 So. 600; Phillips v. Smith, 214 Ala. 382, 107 So. 841.

Section 7883, of the Code, provides: "No mortgage, deed or other conveyance of the homestead by a married man shall be valid without the voluntary signature and assent of the wife, which must be shown by her ex-

428

amination, separate and apart from him, before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to such mortgage, deed, or other conveyance, which certificate must be substantially in the form for homestead acknowledgment in section 7696 (3998)."

This Code provision further evinces a legislative purpose to protect the rooftree, and was made for the evident purpose of throwing a safeguard around the wife, in order that her signature and assent to the conveyance might be free from duress or other improper influence, which the presence of the husband might exercise over her, to induce her to affix her signature and give her assent to the conveyance.

■ The fact that the wife is insane does not alter the situation, or authorize the husband to incumber or alienate the homestead, except in the mode and manner provided by the Constitution and the statute law on the subject. Thompson v. New England Mortgage Security Co., 110 Ala. 400, 18 So. 315, 316, 55 Am. St. Rep. 29; Lewis v. Lewis, 201 Ala. 112, 77 So. 406; Panton v. Manley, 4 Ill. App. 210; Alexander v. Vennum, 61 Iowa, 160, 16 N. W. 80; Maxwell v. McCall, 145 Iowa, 687, 124 N. W. 760; Singleton v. National Land Co., 183 Iowa, 1108, 167 N. W. 97; Petersen v. Skidmore, 108 Kan. 339, 195 P. 600; Locke v. Redmond, 6 Kan. App. 76, 49 P. 670; Whitlock v. Gosson, 35 Neb. 829, 53 N. W. 980; In re Manning's Estate, 85 Neb. 60, 122 N. W. 711.

The only logical conclusion to be drawn from the above-stated principle is that, where the wife is insane, the homestead cannot be incumbered or alienated in any way, for the all-sufficient reason that the wife, being insane, cannot give her assent to any mortgage or other conveyance of the homestead property.

In the case of Thompson v. New England Mortgage Security Co., supra, Judge Head, in speaking for the court, observed: "The purpose of the statutes in securing an exempt homestead to every resident of the state, and in requiring the wife's voluntary signature and assent to any alienation thereof, when belonging to the husband, is to protect the wife, and through her the family, in the enjoyment of a dwelling place. Turner v. Bernheimer, 95 Ala. 241, 10 So. 750 [36 Am. St. Rep. 207]. This court, as well as those in other states having a similar system, has adopted a strict rule on this subject, in accordance with which it is generally held that, to convey the homestead, there must be a strict compliance with the statutory mode of alienation. * * * The insanity of the wife does not dissolve the bonds of marriage, nor withdraw her or her family from the beneficent purpose of the homestead laws. *The statute is plain, unambiguous, and admits of no exceptions which would destroy its obvious design. If the occupant be a married man, the voluntary signature and assent of the wife, evidenced in the manner prescribed, are essential to a valid alienation of the homestead, unless the conveyance be made to her. Efforts have been made to ingraft other exceptions, arising out of the supposed necessities of the case, upon similar statutes, but they have uniformly failed.*" (Italics supplied.)

Section 8270 of the Code reads: "When any married woman has been legally declared insane, or when any married woman is confined in any Alabama state hospital for the insane, and the superintendent thereof shall have certified in writing to the probate judge of the county of the residence of the husband, that in his opinion such married woman is permanently insane, and such certificate has been recorded in the office of such probate judge, the husband may convey any or all of his real estate, not including the homestead, by deed, mortgage, or deed of trust, as though he were single."

This Code provision carrying the exception relating to the alienation of the homestead clearly shows that the lawmakers fully understood and appreciated the fact that, by reason of section 205 of the Constitution (1901), there could be no legal or valid alienation of the homestead, without the voluntary signature and assent of the wife. And hence the original act, now codified as section 8270, expressly excepted the homestead from its provisions.

While we are fully aware of the fact that courts of equity have and exercise many transcendent powers, yet we have never understood that such courts are above the Constitution and the law, nor have we ever understood that a court of equity could, in any case, disregard any provision of the Constitution. All courts are created by the law, and must administer the law as written.

■ That the circuit court could not authorize the alienation of the homestead, under the facts averred, we are clear. That the bill is without equity we entertain no sort of doubt.

It follows that the decree appealed from must be, and is, reversed, and a decree here entered sustaining the demurrers to the bill. And it further appearing to this court that the bill cannot be amended to give it equity,

an order will be here made and entered dismissing the same.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.