231 So.2d 83

**Chinester WATKINS, Individually and as Admrx. of the Estate of Lucius Watkins, Deceased, et al., etc.**

v.

**R. P. PENNELL.**

**1 Div. 566.**

Supreme Court of Alabama.

Jan. 22, 1970.

Wilson Hayes, Bay Minette, for appellants.

Chason, Stone & Chason, Bay Minette, for appellee.

### PER CURIAM.

This appeal is from a final decree granting appellee relief on a cross bill wherein he contended that certain lots described in the pleading were due to be impressed with an equitable mortgage in his favor. Appellant contends that the trial court committed error in granting this relief.

It appears from the pleading and the evidence that appellant, Chinester Watkins, is

the widow of Lucius Watkins, deceased. Born to their union are two minors, Gladys Marie and Lucius Watkins, Jr., who joined their mother as complainants below. They filed their bill of complaint as amended seeking a decree of the court setting aside a certain deed purporting to have been executed by complainant, Chinester Watkins and her husband, Lucius Watkins, conveying certain lots to appellee, and also seeking specified damages. It further appears that Chinester and her husband, Lucius Watkins, acquired title jointly to two lots located in Baldwin County which are the subject of this suit.

It further appears, as we view the evidence, that Chinester Watkins and her husband occupied these lots as a homestead when they separated in 1958 and the wife went to Mobile, taking her two minor children with her. An inference may be drawn that the separation was due to the husband's attention to another woman, who at the time of suit was occupying the premises and making installment payments hereinafter mentioned.

The pleading and evidence reveal that appellee is the grantee in a certain warranty deed, dated July 28, 1958, purporting to have been executed by appellant, Chinester Watkins, and her husband, Lucius Watkins, and conveying certain-described lots here in controversy. The wife denied that she executed the instrument, or authorized any one to sign it for her. The deed is properly acknowledged before a Notary Public. The recited consideration for the deed is $1.00 and other considerations.

Also in evidence, at the instance of appellee, is a contract in writing between Lucius Watkins and appellee. This contract is also dated July 28, 1958 (the same date as the deed, supra). This contract recites inter alia that the consideration for said deed is $6,000.00, which Lucius Watkins agreed to repay by installments. Upon payment in full, appellee agreed to reconvey the lots to Lucius Watkins. It appears from the evidence that the money advanced

was to be used in building a residence on the premises. At the time of suit, there was a balance of $4100.00. The "other woman" paid two installments on the debt. Lucius Watkins died on August 18, 1967. There is no contention that Chinester Watkins ever signed this contract and the same does not bear her signature.

The trial court decreed that these two instruments, the deed and the contract, constituted an equitable mortgage and fastened a lien on the property in favor of appellee for $4100.00. The decree also provided for foreclosure of the lien in default of payment of said debt.

Chinester Watkins contended in her pleadings and evidence that she never signed or executed the purported deed, and did not authorize any one to sign the instrument for her. In addition to her own testimony that she did not sign the deed, she introduced a banker, qualifying as an expert on handwriting, who testified that certain specimen signatures of appellant, Chinester Watkins, which were introduced in evidence, were not the same signature as appeared on the deed. It was his opinion that the signature "Chinester Watkins," appearing on the deed, was made by a different person than the specimen signatures made by Chinester Watkins.

The testimony of the Notary Public, Ouida Rikard, who signed the acknowledgment on the deed, is to the effect that the signatures on the deed were placed there in her presence, but she did not remember the persons who wrote them, and that if these persons appeared before her she probably would not recognize them. She also testified that she typed the contract mentioned, supra. She again repeated her former testimony that she would not know Lucius Watkins if she saw him.

Appellee testified in answer to interrogatories that he was not present when the signatures to the deed were affixed; also that he made an original loan of $6000.00 to Lucius Watkins and that the balance due was $4100.00. He testified that

Lucius Watkins was present when he (Pennell) signed the contract, but that Chinester Watkins was not there. He also testified that he was not present when Lucius and Chinester Watkins signed the deed and that he did not see either of them sign the instrument, which, incidentally, was not recorded until May 30, 1967, almost nine years after its date.

After carefully considering all the evidence, we conclude therefrom that appellant, Chinester Watkins, did not join in the execution of the deed to appellee and that she is not bound thereby. Nor is she bound by the contract which does not purport to bear her signature. It does not appear that the "other woman," in whom Lucius Watkins had a romantic interest, appeared as a substitute and signed the name of appellant, Chinester Watkins, to the deed in question. We cannot say from the evidence who appeared before the Notary and signed Chinester Watkins' name to the deed, but the evidence sustains Chinester Watkins' contention that she did not sign the instrument nor authorize any one to sign for her.

We observed in Lazenby v. Lazenby, 229 Ala. 426, 157 So. 670(2) that:

"Section 7883, of the Code [1923], provides: 'No mortgage, deed or other conveyance of the homestead by a married man shall be valid without the voluntary signature and assent of the wife, which must be shown by her examination, separate and apart from him, before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to such mortgage, deed, or other conveyance, which certificate must be substantially in the form for homestead acknowledgment in section 7696 (3998).' "

Section 7883, supra, is now Section 626, Title 7, Code 1940, Recompiled in 1958, but in an amended form (Act No. 115, p. 183, 1931 Acts of Alabama; Act No. 83, p. 300, Vol. 1, 1951 Acts of Alabama, effective July 1, 1951). There is no change in requiring the voluntary signature and assent of the wife.

Further observing in the *Lazenby* case, supra, we said:

"This Code provision further evinces a legislative purpose to protect the roof-tree, and was made for the evident purpose of throwing a safeguard around the wife, in order that her signature and assent to the conveyance might be free from duress or other improper influence, which the presence of the husband might exercise over her, to induce her to affix her signature and give her assent to the conveyance.

\*    \*    \*    \*    \*    \*

"In the case of Thompson v. New England Mortgage Security Co. [110 Ala. 400, 18 So. 315], supra, Judge Head, in speaking for the court, observed: 'The purpose of the statutes in securing an exempt homestead to every resident of the state, and in requiring the wife's voluntary signature and assent to any alienation thereof, when belonging to the husband, is to protect the wife, and through her the family, in the enjoyment of a dwelling place. Turner v. Bernheimer, 95 Ala. 241, 10 So. 750 [36 Am. St.Rep. 207]. This court, as well as those in other states having a similar system, has adopted a strict rule on this subject, in accordance with which it is generally held that, to convey the homestead, there must be a strict compliance with the statutory mode of alienation. \* \* \*.' "

The *Lazenby* case, supra, had the approving attention of this Court in Hewett v. McGaster, 272 Ala. 498, 133 So.2d 189, wherein we observed:

" \* \* \* It has long been settled in this jurisdiction that the alienation of the homestead by the husband without the voluntary signature and assent of the wife, duly acknowledged, is void and inoperative for any purpose. (Citing

Lazenby v. Lazenby, supra, and cases therein cited.)

"Nor does the fact that the wife was living separate and apart from him when the conveyance was made affect the status of the property. Since they were never divorced, Carrie is still Joe's wife. (Citing cases.)

"And the mere separation of husband and wife, regardless of the cause or duration, and even though she might have abandoned him without just cause, cannot be read into the statute and constitution as an exception not therein expressed. The statute makes the signature and assent of the wife essential. Freed v. Sallade, 245 Ala. 505, 17 So.2d 868. * * *."

Further in Hewett v. McGaster, supra, we observed:

"Appellant claims as error the failure of the trial court to establish an equitable lien on the lands for permanent improvements allegedly made by him on said property. The contention is without merit. In the absence of an applicable statutory provision, and there is none covering the instant situation, one who makes improvements on the land of another is not entitled to an equitable lien to secure the payment of the costs of improvements unless the person making the improvements was induced by fraud, duress, undue influence, or mistake of such character that he is entitled to restitution. [Citing cases] There is nothing in the record to show any of these circumstances existed so as to entitle the appellant to an equitable lien on the property. Appellant had knowledge or means by which with reasonable diligence he could have acquired knowledge of the infirmity of his title. Estoppel 'cannot be invoked by one who,

at the time the improvements were made, was acquainted with the true character of his own title or with the fact that he had none.' 19 Am.Jur. 788. * * *"

There is no contention by appellee that he was induced by fraud, duress, or undue influence to make the improvements, or mistake of such character that he is entitled to restitution. Even if such contention were made, the evidence would not sustain such claim. We think that appellee had knowledge or means by which, with reasonable diligence, he could have acquired knowledge of the infirmity of his title.

The trial court committed reversible error in impressing the property with an equitable mortgage. There is nothing in the record which would support a statutory lien for the improvements.

The ruling of the trial court that appellants were not entitled to relief was also error. They were entitled to have the deed set aside and declared null and void and to no effect. There was error on the part of the court in denying this relief.

For error in granting relief to appellee under his cross bill, by imposing an equitable mortgage on the property, and in denying the aforementioned relief to appellants, the final decree is reversed and the cause is remanded.

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, and was adopted by the Court as its opinion.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, MERRILL, HARWOOD and MADDOX, JJ., concur.