Certified Question from the United States District Court for the Middle District of Alabama
Pursuant to Rule 18, A.R.A.P., the United States District Court for the Middle District of Alabama requests this court to answer questions of law which are deemed determinative of an action before that court and as to which there is no clear controlling precedent in the decisions of this court.
In support of the certificate, the federal district court submits the following:
"1. STYLE OF THE CASE: The style of the case in which this certificate is made is First Alabama Bank of Dothan vs. RobertRenfro, as Trustee of Donald Earl Crawford, being Civil Action No. 82-220-S, United States District Court for the Middle District of Alabama.
"2. STATEMENT OF THE FACTS: Prior to February 20, 1981, Donald Earl Crawford owned a Flamingo mobile home, Serial No. 9053. This mobile home was not attached to real property and is not claimed by Crawford to be real property. Instead, the parties agree the mobile home is personal property.
"On February 20, 1981, and before that date, Crawford's Flamingo mobile home was the principal residence of Crawford and his wife. On February 20, 1981, Crawford, along with his brother, mother and father, signed a promissory note in the amount of $115,325.07 with the Plaintiff-Appellant, First Alabama Bank of Dothan. As security for this note, Crawford signed a security agreement offering, among other things, his Flamingo mobile home as collateral for said loan. The $115,325.07 note contains the standard waiver of homestead exemption language. The Bank properly recorded a UCC-1 financing statement in February, 1981, showing the Flamingo mobile home as collateral. The Bank had a perfected security interest in the Flamingo mobile home on the date Crawford filed his Petition in Bankruptcy. The Bank's security interest in Crawford's Flamingo mobile home is not a purchase. money security interest.
"The Bank does not have a waiver of homestead by separate instrument executed by Crawford, and the Bank does not have a separate acknowledgment or execution of any waiver of homestead exemption by Crawford's wife. The only waiver of homestead exemption is contained in the commercial note executed by Crawford. Crawford's Flamingo mobile home has been, and is through the date of these proceedings, the principal residence of Crawford and his wife. The fair market value of the Flamingo mobile home is less than $3,000.00, and the debt owed to the Bank exceeds the value of the mobile home. Except for the right to assert his homestead exemption, Crawford has no equity in the mobile home.
"On or about March 2, 1982, Crawford filed a Chapter 7 Petition in the United States Bankruptcy Court for the Middle District of Alabama. In May, 1982, the Bank filed a Petition for Reclamation of Crawford's Flamingo mobile home. The Bank's petition was heard on July 14, 1982. At the hearing held on July 14, 1982, after consulting with the Bank's attorney concerning the Bank's having obtained the proper waiver of exemption, Crawford's attorney withdrew Crawford's claim that the Flamingo mobile home was exempt, that the Bank had no purchase money security interest and that it was a homestead.
"By Order dated July 16, 1982, the Bankruptcy Court granted the Bank's Petition for Reclamation and ordered Crawford to *Page 466 
turn over the property to the Bank within 14 days from the July 16, 1982, Order. On or about July 21, 1982, Crawford filed a motion to reconsider the Bankruptcy Court's Order of July 16, 1982. The motion to reconsider was set down for hearing before Judge Rodney R. Steele on September 8, 1982. On September 8, 1982, a hearing was duly held on Crawford's motion to reconsider. Prior to this hearing, the parties entered into a written stipulation of facts that was presented to Judge Steele for his consideration. In addition to the written stipulation of facts, there were certain other facts orally stipulated that have been incorporated in this Statement of the Facts.
"On October 8, 1982, Judge Steele entered an Order in which he ruled that the Bank's security interest is totally void as against the Flamingo mobile home claimed exempt by Crawford and that Crawford have this mobile home in the bankruptcy proceedings free and clear of the lien of the Bank.
"The Bank timely filed its Notice of Appeal to the United States District Court for the Middle District of Alabama on October 18, 1982. The Bank contends that, since the mobile home was admittedly personal property owned solely by the Bankrupt at the time the security instrument was executed but in which the Bankrupt had no current equity or interest, either the Bankrupt (Crawford) has no homestead exemption or the waiver of exemption stated in the note pursuant to CODE OF ALABAMA, §6-10-121, validly waived the exemption as to the Bank's claim. CODE OF ALABAMA, § 6-10-6, provides that the personal property of a resident of Alabama to the extent of $3,000.00 in value, and otherwise as to matters not here pertinent, is exempt. CODE OF ALABAMA, § 6-10-121, provides that a waiver of a personal property exemption may be made by separate instrument or it may be included in a promissory note, as was done in this case, or otherwise in ways not here pertinent. CODE OF ALABAMA, §6-10-2, limits the homestead exemption to "the extent of any interest" of the homesteader.
The defendant Trustee contends that, since the mobile home was Crawford's homestead (even though Crawford had no equity in it), the mobile home was exempted to Crawford pursuant to CODE OF ALABAMA, § 6-10-2 and that waiver of that exemption was void because it was not executed pursuant to CODE OF ALABAMA, §§6-10-3 and 6-10-122. Section 6-10-2 provides in pertinent part:
 "`The homestead . . . with the improvements and appurtenances, not exceeding in value $5,000.00 and in area 160 acres, shall be, to the extent of any interest he or she may have therein, whether a fee or less estate or whether held in common or in severalty, [is] exempt. . . . For purposes of this section and sections 6-10-38 and 6-10-40, a mobile home . . . if the principal place of residence of the individual claiming the exemption, shall be deemed a homestead.'
"Section 6-10-3 provides, in part:
 "`No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, . . .' duly acknowledged.
"Section 6-10-122 provides, in part:
 "`As to the homestead, the waiver must be by a separate instrument in writing, subscribed by the party . . . and attested by one witness. If such party is a married man, such waiver shall not be valid without the voluntary signature and assent of the wife and acknowledgment by her before an officer authorized to take acknowledgments,. . . .'
"It is conceded that the conveyance and the waiver of the claimed exemption were not executed in accordance with the law pertinent to homestead exemptions but that they were executed in accordance with the law pertinent to personal property exemptions. It is also conceded that Crawford has no remaining equity in the mobile home, but the Defendant Trustee contends that Crawford, nonetheless, has an `interest therein within the meaning of the phrase in § 6-10-2 limiting the homestead *Page 467 
exemption to the extent [of any interest] he or she may have therein.'
"3. THIS COURT, THEREFORE, CERTIFIES THE FOLLOWING QUESTIONS TO THE SUPREME COURT OF ALABAMA: A. Does the maker of a security instrument on personalty in which he has no equity have an interest in the personalty within the meaning of the word "interest" as used in the clause of the homestead exemption law, CODE OF ALABAMA, § 6-10-2, whereby the homestead exemption is limited `to the extent of any interest' the maker may have therein?
"B. Is a mobile home, which is personal property but is occupied as the principal place of residence of the individual claiming the exemption and, therefore, under the provisions of CODE OF ALABAMA, § 6-10-2, a `homestead' for the purposes of §§6-10-2, 6-10-38 and 6-10-40, also to be considered a `homestead' for purposes of §§ 6-10-121, 6-10-3 and 6-10-122, that is, for purposes of determining whether it may be alienated pursuant to the provisions of law pertinent to alienating personal property [§ 6-10-121] or to those laws pertinent to alienating the homestead [§§ 6-10-3 and6-10-122]?"
The answer to the first question must be "no." For purposes of this question, we look to the first part of § 6-10-2:
 The homestead of every resident . . . with the improvements and appurtenances, not exceeding in value $5,000.00 and in area 160 acres, shall be, to the extent of any interest he or she may have therein, whether a fee or less estate or whether held in common or in severalty, exempt. . . .
The facts of this case indicate that the fair market value of the mobile home offered by Crawford as security for the loan in question is less than $3,000.00, while the debt owed to the bank exceeds that amount. Thus, if the bank's security interest in the mobile home is valid, Crawford has no equity in the mobile home to provide him with an interest to which the homestead exemption could attach. This conclusion is consistent with this court's holding in Franklin v. Comer, 170 Ala. 229,54 So. 430 (1911). In that case this court held:
 There being a valid and subsisting incumbrance on the homestead, the defendant had only an interest therein subject to said incumbrance, the amount of which was properly deducted from the value of said homestead; and if his interest, after deducting the amount of the mortgage, did not exceed $2,000 in value, it was exempt from the payment of his debt. . . . Of course, if the incumbrance is inferior to the homestead right, it should not be deducted; but, if it is a valid and subsisting claim or lien on the homestead, it should be deducted in ascertaining the interest of the debtor in the property.
Franklin v. Comer, 170 Ala. at 231, 54 So. at 431. See alsoBrock Candy Company v. Elson, 211 Ala. 244, 100 So. 94 (1924);In re Bradley, 19 B.R. 265 (Bkrtcy.S.D.Ala. 1982).
The answer to the first question being "no," Crawford's possession of an "interest" in the mobile home to which a homestead exemption might attach depends on the answer to the second question. If a mobile home which is occupied as the principal place of residence of the person claiming the exemption may not be considered a homestead for purposes of §6-10-3, then there is a valid incumbrance on the mobile home to the full extent of its value, and Crawford has no interest in it to which the homestead exemption can attach, regardless of whether § 6-10-121 or § 6-10-122 applies concerning waiver of exemptions. However, we hold that this is not the case. We answer the second question "yes."
In deciding that the homestead status of a mobile home as defined in § 6-10-2 also applies for purposes of §§ 6-10-3,6-10-121, and 6-10-122, we must look to the intent of the legislature at the time § 6-10-2 was enacted. McDonald'sCorporation v. De Venney, 415 So.2d 1075 (Ala. 1982). It is also appropriate to look to the purposes and objects of the legislation and any evil sought to be *Page 468 
remedied or avoided by the legislation. McCullough v. State exrel. Burrell, 352 So.2d 1121 (Ala. 1977); Alabama State Boardof Health ex rel. Baxley v. Chambers County, 335 So.2d 653
(Ala. 1976). Statutes intended for the public benefit are to be construed most favorably to the public. Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (1970). Regarding homestead, this court has said:
 Homestead laws are based upon a public policy which recognizes the value of securing to the householder a home for himself and family regardless of his financial condition. The preservation of the home is of paramount importance because there the family may be sheltered and preserved. Home ownership tends to inculcate a spirit of independence which is essential to the maintenance of free institutions.
Walker v. Hayes, 248 Ala. 492, 494, 28 So.2d 413, 415 (1947). The law looks with favor on the homestead, and homestead statutes are to be construed liberally in furtherance of the public policy they express. W.T. Rawleigh Co. v. Patterson,239 Ala. 309, 195 So. 729 (1940).
The preamble to the Act by which the legislature amended §6-10-2 in 1980 refers to it as "an act . . . deeming a mobile home or similar dwelling to be a homestead for homestead exemption purposes. . . ." 1980 Ala. Acts 80-569, p. 879. It is clear that, in amending § 6-10-2 so as to include mobile homes, the legislature, recognizing the increasing numbers of Alabama citizens having mobile homes as their principal place of residence, intended to provide these citizens with those protections that the homestead exemption laws previously provided only to residents of homes fixed upon real estate. Although the statute does not specifically state that a mobile home shall be deemed a homestead for purposes of §§ 6-10-3,6-10-121, and 6-10-122, it is unreasonable to conclude otherwise. If homestead laws are for the purpose of securing to the householder a home for himself and his family, and this security is extended to residents of mobile homes, then the purpose of the legislation is defeated by not allowing the protection of the spouse provided by § 6-10-3 to apply when the dwelling place is a mobile home, as well as the protection of the homestead exemption itself provided by § 6-10-122.
This court in Watkins v. Pennell, 285 Ala. 208, 231 So.2d 83
(1970), quoted with approval from Lazenby v. Lazenby, 229 Ala. 426,157 So. 670 (1934):
 "In the case of Thompson v. New England Mortgage Security Co. [110 Ala. 400, 18 So. 315], supra, Judge Head, in speaking for the court, observed: `The purpose of the statutes in securing an exempt homestead to every resident of the state, and in requiring the wife's voluntary signature and assent to any alienation thereof, when belonging to the husband, is to protect the wife, and through her the family, in the enjoyment of a dwelling place. Turner v. Bernheimer, 95 Ala. 241, 10 So. 750
[36 Am. St. Rep. 207]. This court, as well as those in other states having a similar system, has adopted a strict rule on this subject, in accordance with which it is generally held that, to convey the homestead, there must be a strict compliance with the statutory mode of alienation. . . .'"
Watkins v. Pennell, 285 Ala. at 208, 231 So.2d at 85.
Sections 6-10-3 and 6-10-122 both refer by their language not to "real estate," but to "homestead." It would seem infinitely unjust to recognize the homestead rights of mobile home dwellers as is done in § 6-10-2, on the one hand, and then deny them the protection of those rights afforded by §§ 6-10-3 and6-10-122, on the other.
While one rule of construction utilized by this court in construing statutes is that when a statute enumerates certain things on which it is to operate it is construed as excluding from its effect those things not expressly mentioned (see,e.g., Geohagan v. General Motors Corporation, 291 Ala. 167,279 So.2d 436 (1973)), this court has also recognized that there are occasions when courts must correct or *Page 469 
ignore obvious inadvertences in order to give a law the effect which was plainly intended by the legislature. Hamilton v.Smith, 264 Ala. 199, 86 So.2d 283 (1956). We find that this is one of those occasions.
Moreover, we find that the legislature expressly provided that waiver of the homestead exemption in a mobile home must meet the statutory requirements of § 6-10-3. Section 6-10-40, which was expressly amended by Act 80-569, states:
 When the homestead, after being reduced to the lowest practicable area, exceeds $5,000.00 in value and the husband or wife has aliened the same by deed, mortgage or other conveyance without the voluntary signature and assent of the spouse, shown and acknowledged as required by law, the alienor or, if he or she fails to act, the spouse or, if there is no spouse or if he or she fails to act, their minor child or children may, by filing a complaint, have the land sold and the homestead interest separated from that of the alienee.
(Emphasis added.) The language requires that the voluntary signature of the spouse must be shown and acknowledged asrequired by law. We take this passage to refer plainly to the acknowledgment requirements of homestead exemptions contained elsewhere in the chapter. Any other meaning or reference to other statutes outside the chapter would logically require a specific reference to the outside law. Therefore, § 6-10-40
effectively incorporates and applies the acknowledgment requirements of § 6-10-3 to mobile homes. Given this express attempt to apply homestead procedure to mobile homes, we find the legislature must also have intended to extend the complete protection of homestead exemption requirements to mobile homes, including the separate acknowledgment of waiver under §6-10-122. Again, any other conclusion would create inconsistent homestead procedures because of an omission of the legislature. We cannot endorse such a result.
Thus, we hold that mobile homes deemed to be homesteads for purposes of §§ 6-10-2, 6-10-38, and 6-10-40 shall also be considered homesteads for purposes of §§ 6-10-3, 6-10-121, and6-10-122. That being the case, we find that the security interest of the Bank in the mobile home of Crawford, not being in conformity with § 6-10-3, is void. Therefore, there being no valid encumbrance on the homestead, Crawford has an interest in the homestead to which his exemption may attach. The waiver of exemptions, not being in conformity with § 6-10-122, is likewise invalid.
QUESTIONS ANSWERED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES and EMBRY, JJ., concur.
ALMON, SHORES and BEATTY, JJ., dissent.