**In re William Charles CARROLL and Carrie B. Carroll, Debtors.**

**Bankruptcy No. 85–07320.**

United States Bankruptcy Court, N.D. Alabama.

Dec. 19, 1986.

Harry P. Long, Anniston, Ala., for debtors.

Robert D. Carlee, Anniston, Ala., for City Finance Co.

## FINDINGS AND CONCLUSIONS BY THE COURT ON SECURED CLAIMS AND ON CONFIRMATION OF CHAPTER 13 PLAN

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled case was commenced by the debtors' petition under title 11, chapter 13, United States Code, on November 12, 1985, and is distinguished for remaining pending under that chapter without resolution of the matter of confirmation of the debtors' plan. A confirmation hearing was originally held March 18, 1986, at which it appeared that the debtors had departed from their original plan to pay in full a secured claim filed for General Motors Acceptance Corporation and, instead, proposed to surrender their 1985 model Chevrolet truck in full satisfaction of that claim. The debtors' attorney also stated that he wished to commence an adversary proceeding to determine liens against the debtors' residence lot and the mobile home upon it. The standing chapter 13 trustee appeared in opposition to confirmation to the plan, and the Court entered an order on March 18, 1986, denying confirmation of the plan on the ground that the debtors had abandoned the plan and that it, therefore, could not then be found to be proposed in good faith.

Whereupon, the standing chapter 13 trustee moved for dismissal of the case, and the debtors' attorney countered with a new chapter 13 plan and a motion for reconsideration. A continued hearing on confirmation of the plan and upon the other matters was held before the Court on April 15, 1986, and these matters were taken under advisement. By letter, the debtors' attorney cited the Court to the decision in *First Alabama Bank of Dothan v. Renfro*, 452 So.2d 464 (Ala.1984), dealing with the statutory requirements for an enforceable security interest in a mobile home claimed exempt as a homestead under Alabama law. An adversary proceeding for the determination of liens against the debtors' lot and mobile home was not commenced, and

these matters lay dormant until the Court scheduled a further continued hearing on December 9, 1986, at which it was stated from the bench that the contention by the debtors as to their homestead exemption in the lot and mobile home was not sustained and that confirmation of the plan was again refused.

*Findings of Fact—*

From the case file maintained by the clerk of the Bankruptcy Court, the contents of which the Court will take judicial notice, the matters stated and conceded at the hearings held before the Court, and the testimony of the debtors and of a representative of G.M.A.C., the bankruptcy judge finds the facts as follows:

1. The debtors are husband and wife and live on a modest sum of social security benefits and, possibly, retirement income;

2. The principal structure of their chapter 13 plans has been to pay directly to SouthTrust Mobile Services, Inc., the monthly payments under an alleged first mortgage on their residential lot and mobile home (claimed by the debtors to be subject to a homestead exemption) and to pay fixed monthly payments to the trustee—by which allowed secured claims would be paid in full, together with compensation for the installment payment, calculated at 12% per annum on the decreasing balance and by which only a little or nothing would be paid upon the allowed unsecured claims;

3. The monthly amount to be paid to the trustee was increased from $40.00 to $60.00, and the treatment of the allowed secured claim of G.M.A.C. was changed to provide for a surrender to the creditor of the collateral for the debt, in full satisfaction of the claim;

4. SouthTrust did not attempt to file a proof of claim until after the last day for the filing of such proofs of claim,[1] and its claim was not allowed, but the sum necessary to pay-off or satisfy the debt in cash, at the commencement of the case, was established by the evidence as being approximately $9,000;

5. When the debtors purchased their mobile home, financed by a loan from SouthTrust, it was immediately moved onto the debtors' lot, where the wheels and axles were removed, the underpart enclosed with concrete blocks and underpinning, and a porch built onto it, and it was in this condition when the debtors later executed and delivered to City Finance Company of Alabama, Inc., a real estate mortgage which described their residential lot and a security agreement which described two motor vehicles and the mobile home;

6. The real estate mortgage contained the debtors' acknowledgment of their execution of the mortgage before a notary public and was duly filed for public record;

7. City Finance's claim was for $9,696.18 (after elimination of $7,577.16 in postpetition finance charges), contained a rejection of the debtors' plan, and was secured, if at all, at the commencement of the case, by the residence lot and mobile home;

8. Besides a debt owed to a bank, which was to be paid by Mrs. Carroll's brother, and a partly-secured claim of G.M.A.C. for $12,584.08, the only other allowed secured claim was for less than $50.00, owed on a piece of jewelry; and

9. At the commencement of the case, the 1985 model truck to be surrendered on the claim of G.M.A.C. had a value of $8,500.00, and the residence lot and mobile home had a value of $19,000.00.

*Conclusions by the Court—*

The attorney for the debtors, resting his argument upon the holding in *First Alabama Bank of Dothan v. Renfro, supra,* contended that SouthTrust had the first claim against the residence lot and mobile home, that the debtors were entitled to a homestead exemption in the property of $10,000.00,[2] and that the property did not exceed in value the $9,000.00 owed to SouthTrust plus the exemption, leaving the allowed claim of City Finance totally unse-

---

**1.** Bankruptcy Rule 3002(c).

**2.** Code of Ala. (1975) (1985 Supp.) § 6–10–2.

cured. Counsel's attempt to interject a homestead exemption for the debtors between this property and City Finance's claim rests upon a proposition which cannot be sustained, i.e., that the rights of City Finance in the property depend upon a legally-sanctioned waiver of the debtors' homestead exemption rights in the property. The contention is that § 6–10–122 [3] requires that a waiver of a homestead exemption in Alabama "must be by a separate instrument in writing ... attested by one witness" and, in the case of a married woman, acknowledged by her before a notary public or like officer. In the *First Alabama Bank of Dothan* case, *supra,* it was held that a security interest in a debtor's mobile home, which was his and his wife's principal residence and which was *personal property,* was not enforceable in a bankruptcy case, upon the debtor's assertion of a homestead exemption in the mobile home, because the alleged lien holder did not have a waiver of the homestead exemption by an instrument separate from the security agreement executed by the debtor.

In the case before the Court here, City Finance Company does not have a waiver of the debtors' homestead exemption separate from the instrument which creates its rights in the residence lot and mobile home of the debtors. Here, however, the instrument which creates the rights of City Finance in the property is a real estate mortgage, containing an acknowledgment by the debtors before a notary public. Here, the mobile home had been permanently affixed to the debtors' real property—to the extent that the term "permanently affixed" may be aplied to structures affixed in a substantial and not temporary manner to real property. Section 6–10–3 [4] covers the alienation of the homestead by a married person—by mortgage, deed, or other conveyance—and requires "the voluntary signature and assent of the husband or wife, which must be shown by his or her exami-

nation before an officer authorized by law to take aknowledgments of deeds, and the certificate of such officer *upon, or attached to,* such mortgage, deed, or other conveyance,...." [emphasis added.] The Alabama statutes [5] provide that conveyances for the alienation of lands must be attested by one witness or acknowledged before a notary public or other officer listed in the statutes.

█ In this case the mobile home is as much a part of the debtors' real property as would be any residential structure which might have been constructed upon it by carpenters and masons. The question involved with the claim of City Finance is whether or not there was a proper alienation of the debtors' homestead as a piece of real property and not whether there was an effective waiver of the debtors' homestead exemption as to a piece of personal property—a mobile home.

The controlling instrument is the mortgage, which specifically describes the real property (but not the mobile home—a part of the real property). The security agreement, which specifically describes two automobiles previously owned by the debtors and the mobile home, would be ineffectual to create a security interest in the mobile home because of the prior incorporation of the mobile home into the real property. The security agreement held by City Finance is irrelevant, as is the purported waiver of the debtors' exemption rights in the mobile home, in the face of the real property mortgage held by the creditor. Nothing has come to the attention of the Court which indicates any imperfection in this creditor's real property mortgage, and the Court concludes that the claim is secured to the extent of the value of the property in excess of prior liens.

█ The only prior lien which the Court can conclude with assurance rests upon this property is the State's recurring, succeeding lien for ad valorem taxes. There is

---

**3.** Code of Ala. (1975).

**4.** *Id.*

**5.** Code of Alabama (1975) §§ 35–4–20, 35–4–23, 35–4–24, 35–4–29.

no proof—only the allegation in the Chapter 13 Statement [6]—that SouthTrust has a prior mortgage, securing a debt of $9,000.00. The Court is left to the conclusion that the claim of City Finance is an allowed secured claim for $9,696.18 [7] and that it would have to be paid in full, plus 12% per annum interest upon the declining balance, as required by the terms of the debtors' plan, or with some other compensating factor as required by the provisions of 11 U.S.C. § 1325(a)(5)(B). In order to pay this claim alone, the trustee would have to be provided by the debtors with approximately $190.00 each month, and this does not take into account the small secured claim for a piece of jewelry and the administrative charge by the trustee of 8% upon all sums paid under the plan by the debtors.

Considering the debtors' last offer to pay the trustee $60.00 each month (or $3,600.00 over 60 months) and their total financial inability to make a substantial increase in this offer, the plan is seen to be entirely infeasible; therefore, it cannot be found to be proposed in good faith, as required by 11 U.S.C. § 1325(a)(3). Furthermore, it is not established that the proposal by the debtors to pay in full the claim of South-Trust would not be a highly unfair discrimination in paying that claim (if unsecured) in full while paying nothing upon the allowed unsecured claims.[8]

There has been no indication that the debtors wish to convert this case to a liquidation case under title 11, chapter 7, United States Code, and an order will be entered denying confirmation of the debtors' plan as last modified and granting the trustee's motion to have the case dismissed out of court.

6. Official [Bankr.] Form N. 10.

7. The claim of City Finance for $9,696.18, of course, is fully secured whether or not South-Trust has a prior lien securing a debt of $9,000, in view of the Court's finding that the property had a value at the commencement of the case of $19,000.

8. *See* 11 U.S.C. § 1322(b)(1).