**In re Maxine Wideman GARRETT and Jimmy Scott Garrett, Debtors.**

**In re Carl Stanley KELLY a/k/a Carl Stanley Kelley, Debtor.**

**Bankruptcy Nos. 87–03354, 87–02000.**

United States Bankruptcy Court, N.D. Alabama, W.D.

July 28, 1987.

J. David Hood, Jasper, Ala., for debtors.

Benjamin Johnson, Birmingham, Ala., for creditor, Bedford Financial Corp.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

The above-styled cases came before the Court for confirmation of the debtors' proposed Chapter 13 plans of reorganization. At the Confirmation Hearings, a question was raised as to the secured status of certain lenders who held security interests in the debtors' mobile home homesteads. After consideration of the Alabama Supreme Court's decision in *First Alabama Bank of Dothan v. Renfroe*, 452 So.2d 464 (Ala.1984), it is the opinion of this Court [1] that in the Kelly case, Bedford Financial Corporation is a secured creditor. However, the Court finds that in the Garrett case, both the First National Bank of Jasper [2] and Security Mutual Finance Corporation are unsecured creditors. This memorandum shall constitute findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

The Garrett and Kelly cases have been consolidated for the purposes of this opinion because they involve common questions of law. In both cases, the debtors executed security agreements covering mobile homes used as their place of residence.

In the Garrett case, the debtors executed two separate agreements with different lenders. The first agreement, which was executed in June of 1985, purportedly gave the First National Bank of Jasper (the Bank) a security interest in a 1974 Holiday 12 × 65 Mobile Home, Serial Number 0592384. According to the security agreement, the Garrett's executed the agreement so that they could obtain funds to purchase the mobile home. In August of 1985, the Garretts executed a second security agreement, on the same mobile home, in favor of Security Mutual Finance Corporation (Security Mutual). In Security Mutual's documentation, the home was described as a 1970 Holiday 12 × 65 Mobile Home, Serial Number 701–8907.

---

1. It should be noted that at the Confirmation Hearing the Court ruled on the secured status of the parties involved in this opinion. Thus, this opinion is merely intended to clarify the application of the *Renfroe* decision to cases which come before this Court.

2. The Court's decision on the secured status of claim filed by the First National Bank of Jasper is based on the fact that the bank failed to properly perfect its claim by filing a UCC–1 statement. Under the 1981 amendments to the Ala. UCC Sect. 7–9–301(1)(d) effective on February 1, 1982, all security interests in mobile homes classified as consumer goods, must be perfected by filing a UCC–1 statement in the Probate Court of the county where the consumer resides. See opinion of Judge William Acker in *In re Sewell*, CV No. 83–C–2426–S Slip Op. (N.D.Ala. February 28, 1984), holding that a UCC–1 was not necessary to perfect a security interest in pre Feb. 1, 1982 contracts.

In the Kelly case, Carl Stanley Kelly and his wife executed a purchase money security agreement in a 1985 New River Oaks 14 × 72 Mobile Home, Serial Number 15200 in May, 1986. The security agreement was executed in favor of Adventure Homes, Inc. who later assigned the Kellys' contract to Bedford Financial Corporation (Bedford). A financing statement covering the mobile home in question was filed on July 3, 1986.

## CONCLUSIONS OF LAW

The *Renfroe* decision focused on Sections 6–10–3 and 6–10–122 of the Alabama Code (1975). Section 6–10–3 requires that for an alienation of a married persons homestead interest to be valid, the assent of the husband or wife must be shown by a voluntary signature, duly acknowledged, "upon or attached to" the relevant instrument/s.[3] Section 6–10–122 requires that any waiver of the homestead exemption must be shown "by a separate instrument", subscribed by the party making the waiver and attested by one witness. In the case of married persons, 6–10–122 requires the voluntary, duly acknowledged, signature of the spouse.[4] The issue this Court must determine is whether these sections are equally applicable to non-purchase money and purchase money contracts.

NON–PURCHASE MONEY CONTRACTS.

The facts of the *Renfroe* decision centered around a non-purchase money contract in which the lender, First Alabama Bank, had the debtor sign a note containing their standard homestead exemption waiv-

er. First Alabama Bank then properly recorded a UCC–1 financing statement. Based on the facts before it, the Alabama Supreme Court determined that First Alabama Bank was an unsecured creditor because it had not complied with the requirements of 6–10–3. Having made the determination that Renfroe had not validly alienated his homestead interest, the Court found it unnecessary to examine the waiver issue. Thus, it is clear that non-purchase money mobile home lenders must comply with Section 6–10–3 and 6–10–122 to be fully protected.

PURCHASE MONEY CONTRACTS

As stated earlier, *Renfroe* dealt with a non-purchase money contract. However, no particular significance was attached to this fact in the Court's opinion. Rather, the Supreme Court's decision simply mentioned in passing that the *Renfroe* contract was non-purchase money.

After reviewing the applicable law, it is apparent that the *Renfroe* decision turned on the fact the contract involved was not a purchase money contract.

Section 6–10–2 of the Alabama Code grants to the residents of this State the right to claim a homestead exemption not to exceed $5,000.00 in value and 160 acres in area. Section 6–10–3 then provides for certain restrictions on the alienability of an individual's homestead. Section 6–10–4, which is contained with the same article as both 6–10–2 and 6–10–3, states that

[t]he provisions of this article [5] shall not, however, be so construed as to prevent

---

3. Section 6–10–3 provides:
   **Sect. 6–10–3. Same—Alienation by married person.**
   No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgments of deeds and the certificate of such officer upon, or attached to, such mortgage, deed or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by section 35–4–29.

4. Section 6–10–122 provides:
   **Sect. 6–10–122. Same—Homestead.**
   As to the homestead, the waiver must be by a separate instrument in writing, subscribed by

the party making the same and attested by one witness. If such party is a married man, such waiver shall not be valid without the voluntary signature and assent of the wife and acknowledgment by her before an officer authorized to take acknowledgments in the form of the individual acknowledgment prescribed by this Code. If such party is a married woman, such waiver shall be executed only in the mode prescribed by section 30–4–12 for the alienation of her lands.

5. It is to be noted that Article 3 is titled "Waiver of Right to Exemption" and 6–10–122 covers waiver of the right to claim a homestead exemption and, at first blush, it would appear that 6–10–122 would be unaffected by 6–10–4. But on closer analysis, Section 6–10–2 gives the "right" to claim the homestead exemption

any lien attaching to the homestead in favor of any laborer, merchant or materialman for work and labor done or for materials furnished <u>or in favor of any vendor for unpaid purchase money</u> or so as to affect any deed, mortgage or lien on such homestead, lawfully executed or created. (Underlining for emphasis)

Thus, it is clear that 6–10–4 effectively nullifies the right to claim a 6–10–2 homestead exemption and the 6–10–3 restrictions on alienation if it is purchase money.

This Court's interpretation of Section 6–10–4 is supported by Alabama case law. For example, in *Cates v. White*, 252 Ala. 422, 41 So.2d 401, 402 (1949) it was stated that a "homestead claim cannot prevail against a purchase-money mortgage given contemporaneously with the purchase." See also *Martin v. First National Bank of Opelika*, 279 Ala. 303, 184 So.2d 815 (1966) (a lien secured by a mortgage which is lawfully executed or created is superior to a claim of a homestead exemption); *Waters v. Union Bank of Repton*, 370 So.2d 957 (Ala.1979) (homestead rights would not prevail over vendor's lien).

The following chart illustrates the interplay of Sections 6–10–2, 6–10–3, 6–10–4 and 6–10–122.

**VALIDITY REQUIREMENTS OF A SECURITY INTEREST IN A MOBILE HOME**

| Type Transaction | Marital Status | UCC–1 Financing Statement Filed With Probate Judge Sec. 7–9–302(1)(d) On Post 2–1–82[7] Contracts | Sec. 6–10–3 Acknowledgment "upon or attached to" Security Agreement— Restriction on Alienation | Sec. 6–10–122 Acknowledgment "by separate[6] instrument" Waiver of Exemption |
|---|---|---|---|---|
| I. Purchase Money | Immaterial | Yes | No | No |
| II. Non-Purchase Money | Married | Yes | Yes | Yes |
| III. Non-Purchase Money | Single | Yes | No | Yes |

Separate confirmation orders have been entered in conformance with this opinion in both cases.

(which is in Article 1) and 6–10–122 governs the "waiver" of that right (which is in Article 3), therefore, since 6–10–4 operates on the "right" given by 6–10–2, then there is no need for operation of the "waiver" in 6–10–122 (as there is no "right" to "waive"). The net result is that no one can claim a 6–10–2 homestead exemption against a purchase money transaction.

6. Renfroe explained that Section 6–10–3 requires the acknowledgment to be "upon or attached to" the instrument in order to validly alienate a homestead (which after 2/1/82 includes a mobile home). Section 6–10–122 is even a more stringent requirement than Section 6–10–3 in that it requires an acknowledgment

"by separate instrument". Renfroe makes this separate instrument requirement (which in the past, was customarily applicable in real estate transactions), now applicable to mobile home transactions. In the usual real estate transaction, there is normally a separate "note" (which includes the waiver of exemption), and also a separate "mortgage". After Renfroe, nonpurchase money mobile home lenders are required to comply with the stringent "separate instrument" requirement of section 6–10–122.

7. Post 2/1/82 contracts must file a UCC–1, but not pre–2/1/82 contracts. See footnote 2, supra.