In re James M. THOMAS and
Linda P. Thomas,

James M. THOMAS and Linda P.
Thomas, Plaintiffs,

v.

SOUTHTRUST BANK OF ALABAMA,
N.A., as Assignee of SouthTrust
Mobile Services, Inc., Defendant.

Bankruptcy No. 87–1903.
Adv. No. 87–0751.

United States Bankruptcy Court,
N.D. Alabama.

March 31, 1988.

As Corrected May 16, 1988.

Julian Stephens and Thomas Knight, Anniston, Ala., for plaintiffs.

Carlos Heaps, Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND OPINION

L. CHANDLER WATSON, Jr.,
Bankruptcy Judge.

*Introduction—*

This is a chapter 13 bankruptcy case, commenced by the debtors' joint petition under title 11, United States Code, filed in this Court on March 2, 1987. The above-styled adversary proceeding was commenced by the debtors' complaint filed herein on December 3, 1987, seeking preliminary and permanent injunctions, a monetary judgment for damages, and other relief against the defendant bank. On February 1, 1988, this Court entered a temporary injunction in this proceeding, which forbids the bank to proceed with its efforts to obtain possession of property from the debtors in a certain civil action in the state courts or otherwise. On February 2, 1988, the Court heard counsel for the parties on a motion by the debtors for a summary judgment and on a motion by the bank for a judgment on the pleadings. It appeared to the Court that this matter was thus presented for a decision as if upon opposing motions for summary judgment. It did not appear that there was any dispute as to the relevant facts, which appear from the pleadings, testimony given at a prior hearing, an affidavit, and the case file maintained by the clerk of the bankruptcy court, of the latter of which the Court will take judicial notice. The Court concluded that the bank was bound by the terms of the debtors' confirmed chapter 13 plan not to proceed against the debtors or their property and that the debtors should have the relief sought by them. This conclusion was announced from the bench, and the Court now sets forth its findings of fact and conclusions.

*Findings of Fact—*

From the pleadings, the prior evidence (presented August 26, 1987), the affidavit, and the bankruptcy case file, the Court finds the facts relevant to this adversary proceeding to be as follows:

1. On October 11, 1983, the debtors purchased from SouthTrust Mobile Services, Inc., a used 1982 model, 14-foot by 70-foot, mobile home, at a price of $12,579.65, paying a down payment of $1,200;

2. The balance of the purchase price of $11,379.65 was financed by the vendor at 16.5% interest, over ten years, with 120 monthly payments of $194.18 each, for a total finance charge of $11,921.95;

3. To assure payment the debtors gave to the vendor a security interest in the mobile home, which was perfected by a duly-filed financing statement;

4. A combined financing contract and security agreement covering the transaction was assigned by the vendor to the bank;

5. The debtors' Chapter 13 Statement, filed with their March 2, 1987, petition, scheduled the bank as a creditor for $11,-621.93—the debt shown to be secured by the mobile home, which there the debtors valued at $8,000;

6. The debtors' concurrent plan provided that "[t]he debtor(s) propose to pay in full all allowed claims, from future income, through the Chapter 13 trustee," that "[t]he holder of each filed and allowed secured claim shall retain the lien securing such claim until the claim is satisfied under the plan or the debt is otherwise satisfied," and that an interest factor of 11% be added to secured claims not to be paid at once upon confirmation of the plan;

7. On March 5, 1987, the clerk mailed to all creditors a notice advising of the filing of the debtors' petition, that the meeting of creditors would be held April 8, 1987, that the bar date for filing claims was July 7, 1987, and that a confirmation hearing would be held July 22, 1987, together with a copy of a portion of the plan showing the provisions referred to above;

8. The bank did not file a proof of its claim in this case by July 22, 1987, but was represented by legal counsel at the hearing on confirmation of the debtors' plan;

9. No objection was made to the plan, and it was confirmed by order of the Court dated July 27, 1987, as to which no appeal was taken;

10. The confirmation order included these provisions:

5. The holder of each allowed secured claim provided for by the plan shall retain such creditor's interest in the property of the debtor(s) which secures the claim, until such claim has been satisfied;

6. The property of the estate shall not vest in the debtor(s) until a discharge is granted under said Chapter 13 or this case is dismissed out of Court;

11. Absent from the plan and the order confirming the plan was any provision that the debtors not "remain in possession of all property of the estate";

12. On August 4, 1987, the bank sought relief from the automatic stay provided by 11 U.S.C. § 362, by way of leave to foreclose its security interest in the debtors' mobile home;

13. The bank alleged a principal debt owed of $11,921.65, a default in payments, a lack of adequate protection for the bank, an absence of a debtor's equity in the property, that the collateral was not necessary for the "administration of the estate," [*sic*] and that "[a] secured claim [had] not been filed by" the bank, the debtors, or the trustee;

14. The debtors objected to the motion, resulting in a hearing before the Court on August 26, 1987;

15. The evidence established that the principal debt and accumulated interest exceeded the value of the collateral and that no payments were being made on the debt;

16. [Due to questions raised at the hearing as to the effect of the debtors' use of the mobile home as their homestead and as to the effect of the bank's not filing a proof

of claim by the stated bar date and as to the effect of confirmation of the plan,]the motion was taken under advisement;

17. The debtors did not obtain an order from the Court that the stay continue in force[, and by virtue of a provision of 11 United States Code § 362(e)[1] the stay under that section terminated as to the bank on September 3, 1987];

18. On October 15, 1987, the bank sued the debtors in the Circuit Court of DeKalb County, Alabama, for possession of the mobile home or, alternatively, its value and for "damages for [its] detention, interest, and cost," but the bank's counsel asserts to the Court that—notwithstanding the language of its complaint—the bank does not seek from the debtors any damages arising before the filing of this petition; and

19. The bank filed a motion for summary judgment in the state court on December 1, 1987; whereupon, the debtors began this counterproceeding in their bankruptcy case, wherein the confirmed plan is pending and no discharge has yet been granted to the debtors.

*Conclusions by the Court—*

■ The undisputed fact that this mobile home is the debtors' "homestead" under Alabama statutes dealing with homesteads, is not relevant to the dispute between these parties because the mobile home was not the debtors' homestead at the time that they granted a security interest in it to the bank's assignor. This was a purchase transaction, and the debtors had no homestead or other interest in the mobile home until the transaction was completed.[2]

1. "Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect...."

2. In *First Alabama Bank of Dothan v. Renfro,* 452 So.2d 464 (Ala.1984), it was established that a mobile home which remained personalty but was occupied as the owner's home was subject to the Alabama statutory requirement, in Code of Alabama (1975) § 6–10–3, that the alienation of a married person's homestead is void without "the voluntary signature and assent of the hus-

band or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgements of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed, or other such conveyance,...." Although the instant bankruptcy judge, in *In re Carroll,* 67 B.R. 1020 (Bankr.N.D. Ala.1986), erroneously stated that the *Renfro* decision rested upon Code of Alabama (1975) § 6–10–122, which requires a separate, witnessed or acknowledged instrument for the effective waiver of a homestead exemption from levy and sale on a writ of execution, it was the absence of an acknowledgement before a notary public or other authorized officer which was

Thus, statutory requirements that the spouse of a married person must voluntarily sign and assent to—and so acknowledge before a notary public or other authorized officer, who thus certifies—an alienation of one's homestead are determined to be inapplicable to a transaction for the purchase of a mobile home. *Compare, In re Garrett*, 77 B.R. 901 (Bankr.N.D.Ala.1987) (Wright, C.B.J.).

■ Other nonexistent issues in this adversary proceeding revolve around the lifting of the stay provided by 11 United States Code § 362(a). Here, the stay lifted by virtue of the provisions of subsection (e) and the absence of a court order that the stay continue in effect, entered within 30 days of the bank's request for leave to enforce its security interest in the debtors' mobile home. The debtors argue that it was implied that the Court continued the stay in effect and that the bank's efforts to seize their mobile home violated the stay, but they do this with very little passion, and the Court has even less affection for this notion. The wording of the statute may imply that the stay is to be continued in force (beyond the 30 days after the request for relief from the stay) only if the Court finds that "there is a reasonable likelihood that the party opposing relief from such stay will [ultimately] prevail." There certainly is no implication that a continuance in effect of the stay should be inferred if a judge takes the matter under advisement because of its complexities.

■ On the other hand, the bank claims that the mere lapse of this congressional restraining order—apparently by some magnification not revealed—is res judicata of all issues between these parties and (of course) in favor of the bank. For this greatly-less-than-obvious proposition, reference is made to *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306 (11th Cir. 1982). There District Judge Allgood wrote for the Court that the bankruptcy court's

order finding the creditor not to have an enforceable security interest in the debtor's property and denying relief from the stay under § 362 was a final, appealable order. Judge Allgood merely stated that the ruling by the bankruptcy court would be res judicata as to any subsequent attempt by the creditor to obtain possession of the collateral and that its only option was to appeal this order.

That proposition is not the converse of the mere expiration of the stay in accordance with the terms under which it is imposed by the statute. Activation or execution of the statutory provision for expiration of the stay 30 days after a request for relief from the stay does not depend upon any action by the requesting party. It does not depend upon any proof by the movant or any default or confession by the party against whom relief is sought but depends only upon absence of a court order that the stay continue in effect. The lifting of this stay by virtue of the provisions of this 30–day rule, without something more, does not prove anything between the parties and cannot be res judicata of their relationship. The 30–day rule is a trade-off—the stay is automatically imposed by the filing of the petition in bankruptcy,[3] and the stay is automatically lifted if relief from the stay is requested and the stay is not continued in effect within 30 days.[4] No proof is necessary in either case and no adjudication by the court takes place.

■ This creditor—as have many courts—expends a great deal of powder and shot on the effect of section 506(d) of the bankruptcy statutes,[5] in a chapter 13 bankruptcy case, but when the smoke has cleared away that, also, is seen as a nonexistent issue in this case. In the familiar text Don Quixote declares with appropriate solemnity that the unchallenged liens of "secured creditors" [*sic*—creditors owed secured debts][6] pass unimpaired through bankrupt-

held to render the security agreement there ineffective.

3. 11 U.S.C. § 362(a).

4. 11 U.S.C. § 362(e).

5. 11 U.S.C. § 506(d).

6. "This provision abolishes the use of the terms 'secured creditor' and 'unsecured creditor' and substitutes in their places the terms 'secured claim' and 'unsecured claim.'" Senate Report

cy, because of prior case law and now the statute—§ 506(d). This revelation arises from a revered statement in the "legislative history" of the subsection which, *in context*, is entirely appropriate and which is as follows:

> Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.

House Report No. 95–595, 95th Congress, 1st Session 357 (1977), U.S.Code Cong. & Admin.News 1978, p. 6313.

In the version originally enacted and as it provided until a 1984 amendment, the applicable part of section 506(d) basically provided that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless ... a party in interest has not requested that the court determine and allow or disallow such claim under section 502." After the 1984 amendment,[7] the applicable part of the subsection provided: "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless ... such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501." Thus the present version of subsection 506(d) provides as did the original—but in a slightly less convoluted manner—that (1) a lien is void if not an "allowed secured claim," but that (2) the lien is not void if it is not an "allowed secured claim" for no other reason than that a proof of claim was not filed in the bankruptcy case.

To this Court, at least, the provision could have been stated in both instances in a much simpler way. This is a fairly simple proposition which could have been thus stated: "[a] lien which secures a claim against the debtor is void if the claim is not an allowed secured claim, except for the sole reason that no proof of the claim was filed under section 501 of this title."

Upon any mature reflection, it surely must be seen that § 506(d) is a part of the statutes dealing with claims in general and that § 506(d) refers to the filing or not of a proof of claim as provided for in § 501 and the allowance or disallowance of a *filed claim* under the provisions of § 502. Section 506(d), however, does not purport to modify the filing provisions of § 501 or the allowance-disallowance provisions of § 502. Those provisions are modified in chapter 9 cases by § 925 and in chapter 11 cases by § 1111, which provide that proofs of claim are deemed filed under § 501 with respect to claims listed by the debtor, unless listed as "disputed, contingent, or unliquidated." Bankruptcy Rule 3003(b) restates these provisions, and subdivision (c) of the rule states that any creditor whose claim is unscheduled or is listed as "disputed, contingent, or unliquidated" must file a proof of claim within the time fixed by the court or "not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Sections 501 and 502 and Rule 3003 do not purport to deal with the lien of a creditor not having an *allowed* secured claim. They have to do with the purpose that there be some finality and certainly as to the participating shares in a reorganization case at the point where the creditors consider the plan, the court considers the plan, and—if confirmed—the debtor consummates the plan. There is a similar purpose in §§ 501 and 502 and Bankruptcy Rule 3002 within the respective framework of a chapter 7 liqui-

No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5854. Likewise, in House Report No. 95–595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, p. 6312. *But see United Savings v. Timbers of Inwood Forest*, 484 U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("undersecured creditors," "secured creditor," "secured party," "oversecured creditors," "unsecured creditors," "secured claimant," and "underse-

cured petitioner."); *In re Harris*, 64 B.R. 717 (Bankr.D.Ct.1986) ("secured creditor."); *In re Honaker*, 4 B.R. 415 (Bankr.E.D.Mi.1980) ("secured creditor" and "unsecured creditor."); and Bankr.R. 3002(a) ("unsecured creditor.").

7. Bankr.Amends. and Fed.Judgeship Act of 1984; Pub.L. 98–353, § 448(b) (July 10, 1984).

dation case or a chapter 13 case for the adjustment of debts of an individual with regular income.[8]

■ In general, Bankruptcy Rule 3002(a) provides that "[a]n unsecured creditor [*sic*] ... must file a proof of claim ... in accordance with this rule for the claim ... to be allowed...." The rule makes due exception for a case superseded by a chapter 7 case, for chapter 9 and 11 cases, and for claims filed for creditors by trustees, debtors, or codebtors. As originally proposed by the rules committee, this provision did not contain the word "unsecured," but its addition is not explained or even alluded to in the "Committee Notes." Subdivision (c) of Rule 3002 generally requires in a chapter 7 or 13 case that a proof of claim shall be filed within 90 days after the first date set for the statutory meeting of creditors, with no distinction being stated in regard to *secured* or *unsecured* claims. For the unpersuasive reason that both subdivisions (a) and (c) appear in the same rule, one court has concluded that since Rule 3002(a) applies only to an "unsecured creditor" [*sic*] the provisions of subdivision (c) of that rule must only apply to an unsecured claim and that a creditor may file a secured claim in a chapter 13 case, after expiration of the 90 days stated in Rule 3002(c). *In re Harris,* 64 B.R. 717 (Bankr.D.Ct.1986). While Rule 3002 requires that an unsecured claim not be allowed unless timely filed, there is no good reason in the language or otherwise to construe the provision setting forth when "a proof of claim shall be filed" as referring to unsecured claims but not to secured claims.

In fact, underlying reasons and policies dictate that there be a rule of certainty as to the time by which a creditor or the debtor or the trustee in a chapter 13 case may file a secured claim for a creditor. In

a chapter 13 case, a secured claim requires at least a minimum sum of money (or the equivalent value of other property) from the debtor, unless the creditor agrees otherwise, because of the provisions of 11 U.S.C. § 1325(a)(5)(B), which, unlike its predecessor,[9] permits confirmation of a chapter 13 plan without the assent of the holder of a secured claim. The provision in the prior Bankruptcy Act § 652, dealing with claims of "secured creditors," became (in present § 1325) "each *allowed* secured claim" [emphasis added]; and "dealt with by the plan" became "provided for by the plan." In § 1325(a)(5)(B) there are two mandated provisions for the confirmable chapter 13 plan:

1. The plan must provide that the holder of such claim *retain the lien* securing the claim;[10] and

2. That which is to be paid or distributed on the claim must have a value, as of the effective date of the plan, of not less than the *allowed amount* of the claim.

Thus, if the plan does not provide for payment of an allowed secured claim in full at the effective date of the plan, sufficient additional property must be added so that the deferred distribution on the claim will have a present value of not less than the allowed amount of the secured claim. This provision applies equally well to the undersecured claim or evenly-secured claim of a creditor as to an over-secured claim, notwithstanding the recent interpretation given to § 506(b) by the Supreme Court in the *Timbers* case.[11] These requirements with respect to each allowed secured claim, as a condition precedent to confirmation of a debtor's plan, make it a matter of some considerable importance in a chapter 13 case that the allowed secured claims be determined by the time when the debtor, creditors, and the Court must consider

---

**8.** A specific bankruptcy rule governing the filing of proofs of claim in chapter 12 family farmer cases has not been adopted.

**9.** An application for confirmation of a chapter XIII plan could be filed only if the plan had "been accepted in writing ... by the secured creditors whose claims [were] dealt with by the plan...." 11 U.S.C. § 1052 [Bankr.Act. § 652].

**10.** See the provisions of 11 U.S.C. § 1327(c) for the effect of an omission of such a provision in the chapter 13 plan and the order confirming the plan.

**11.** *United Savings v. Timbers of Inwood Forest,* 484 U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

whether the plan conforms to these requirements. It should be noted with regard to the *Harris* decision (to allow filing of a secured claim after the Rule 3002(c) deadline) that the proof of claim was filed *before* the plan had been confirmed.[12]

In the prior Chapter XIII case, the importance of identifying and taking the measure of secured claims was recognized by the 1973 Bankruptcy Rules, which, in Rule 13–302(e)(1), required that a secured claim be filed by the first date set for the first creditor's meeting in order for it to "be treated as a secured claim for purposes of voting and distribution." The importance of these considerations was even further emphasized by a 1976 change to shorten the filing deadline so that the claim had to be filed "before the conclusion of the first meeting of creditors." The 1972 rules provided that confirmation of a debtor's Chapter XIII plan follow a hearing and that the confirmation "hearing may occur at the first meeting of creditors." [13] In "Report of the Senate Committee on the Judiciary No. 95–989," at 13 (1978), U.S.Code Cong. & Admin.News 1978, p. 5799, the importance of secured claims in a Chapter XIII case was thus stated: "[f]inally, the existing chapter 13 [sic] statute is basically and seriously defective at this time in five respects ... [t]hird, secured creditors are dealt with erratically, tediously, and uncertainly, resulting from a hodgepodge of state and federal statutory provisions, bankruptcy and local rules, many conflicting reported cases and varied local customs...." [14]

The congressional solution to the problem of dealing with secured claims in this type of case is found in section 1325(a)(5). Although sometimes referred to as the "cram down," these provisions protect the holder of an "allowed secured claim," while permitting a fair and practical method for the harried debtor to obtain confirmation of a plan in the face of a creditor who has great leverage but who won't "play ball" except on the creditor's home field and by the creditor's own rules, whether reasonable or whimsical. These provisions require—all other conditions being met—that a plan be confirmed if the creditor with an "allowed secured claim" has accepted the plan or is to be given the collateral for the debt.[15] Obviously, if the creditor agrees to the plan, its confirmation presents no constitutional or procedural problem. Likewise, if the collateral for the "allowed secured claim" is surrendered to the creditor, this creditor no longer has a *secured* claim, even if the debt is not entirely satisfied by surrender of the security for the debt. We then come to the provisions for the debtor to obtain confirmation of a plan in the face of lack of acceptance of the plan by a creditor owed a debt which is an "allowed secured claim" and secured by property of the debtor which the debtor does not propose to surrender.[16] These provisions do not *cram* the plan down the creditor's throat as their misnomer suggests but require, first, that the plan must provide that the lien be retained by the creditor. This requirement protects the nonassenting holder of an "allowed secured claim" from the effect of section 1327(c), which would destroy the creditor's lien in the absence of such a provision or a like provision in the court order confirming the plan.[17] All of

---

**12.** 64 B.R. at 720.

**13.** 1972 Bankruptcy Rule 13–213(a).

**14.** *See* Stanley and Girth, Bankruptcy 95 (The Brooklings Institution, 1971).

**15.** 11 U.S.C. § 1325(a)(5)(A) and (C).

**16.** 11 U.S.C. § 1325(a)(5)(B).

**17.** A contention has been made that the wording "free and clear of any claim or interest of any creditor, provided for by the plan" in section 1327(c) does not affect a "lien" because that precise word does not appear in the statute, but those who hold to that view are able to give only papier-maché substance to the congressional language used and have no satisfactory reason for the lien-preservation requirement of section 1325(a)(5)(B)(i). The term "lien" is defined in 11 U.S.C. § 101(33) to mean "charge against or *interest in property* to secure payment of a debt or performance of an obligation." [Emphasis added.] Thus, when "lien" is defined to mean an *interest in property*, and section 1327(c) provides that property vests in the debtor "free and clear of any claim or interest of any creditor," it requires an intrepid, if not imprudent, statutory construction to exclude "liens" from the reach of these provisions. That a creditor's *interest* in

this language was given congressional confirmation by use of the same language in sections 1225 and 1227 of bankruptcy chapter 12, designated "Adjustment of Debts of a Family Farmer With Regular Annual Income." [18] It also should be noted that virtually the same language is found in section 1129(b)(2)(A), dealing with "Reorganization."

As previously noted, a Chapter XIII plan, under the prior Bankruptcy Act, could not be considered for confirmation without the assent of each "secured creditor" whose debt was "dealt with by the plan"; [19] and, in section 1, the prior Act contained this definition:

(28) "Secured creditor" shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this Act or who owns such a debt for which some endorser, surety, or other person secondarily liable for the bankrupt has such security upon the bankrupt's assets;
....

In subdivision (11) of the same section the term "[c]reditor" was given a construction so as to "include anyone who owns a debt, demand or claim provable in bankruptcy." Since these terms would include a creditor who had not filed a proof of claim, the statutory requirement for confirmation of a plan dealing with a "secured creditor's" claim required consent of such a creditor who had not filed a proof of claim. This contrasts with the language of the present statute, which, in § 1325(a)(5) applies the confirmation test only to an "allowed secured claim," which means a proof of such claim was filed under § 501 and allowed under § 502. Additionally, the Act's definition of claims did "not include claims secured by estates in real property or chattels real." [20] As can be seen from the provisions of 1972 Bankruptcy Rule 13–302(e)(1) [21] that a "secured claim" not filed by the conclusion of the first meeting of creditors (at which time the confirmation hearing could be held) would not be treated as secured "for purposes of voting and distribution," the rules had been utilized as far as could be to lessen the problems of dealing with secured claims held by creditors who were uncooperative with the debtor or indifferent to the debtor's plight.

It was with this background that chapter 13 was drafted and enacted as a key piece of the 1978 bankruptcy statute.[22] If § 1325(a)(5) was drafted and enacted by Congress as a resolution of the problems encountered in the often-unsuccessful confirmation process in the old Chapter XIII cases, it is near insulting to its efforts to interpret the congressional product as successfully providing a fair and constitutional method of dealing with "allowed secured claims," while leaving unfiled and unproven claims to float about as potential or

property may include a *lien* in the statutory language of a bankruptcy is confirmed in section 363(f), which provides that a "trustee may sell property ... free and clear of any *interest* in such property ... only if— ... such *interest is a lien* ... or...." [Emphasis added.]

Some say that, even so, the statute vests the property in a chapter 13 debtor free and clear of liens of only those creditors "provided for by the plan" and that a creditor who does not file a proof of claim cannot be said to have been provided for by the plan. This specious construction lacks a showing of common courtesy to common sense. If the plan contains a provision for dealing with debts of the type held by the creditor who fails timely to file a proof of claim or specifically with the debt owed this creditor, the "creditor is provided for by the plan." Whether the creditor avails itself of the plan provision does not alter the fact that the confirmed plan "provided for" the creditor. The failure or the election not timely to file a proof of the claim is ex post facto the provision for the creditor in the plan. To contort the language of section 1327(c) to apply to the lien of a nonfiling creditor only if the plan should contain a provision for creditors who do not timely file proofs of their claims turns the chapter 13 plan and confirmation process into a proverbial Chinese fire drill.

18. Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986; Publ.L. No. 99–554 (1986).

19. Bankruptcy Act § 652(1); formerly, 11 U.S.C. § 1052(1).

20. Bankruptcy Act § 606(1); formerly, 11 U.S.C. § 1006(1).

21. As amended in 1976.

22. Bankruptcy Reform Act of 1978; Pub.L. 95–598, Title I (1978).

actual mines on which the confirmed plan may destruct at the whim of chance or at the whim of a nonfiling creditor.

It certainly was congressional intent that sections 501, 502, and 506 would be supplemented by provisions of the bankruptcy rules. In the "Appendix I" to "House Judiciary Committee Report 95–595," 95th Congress, 1st Session (September 8, 1977),[23] there is a long list of matters to be dealt with by bankruptcy rules of procedure or local rules, including:

(66) Specification of the time, place, form, and number with respect to filing, amending, or withdrawing a proof of claim of [sic] interest including any special rules for governmental units and customers of stockbroker or commodity brokers; ...

(69) Procedure for objecting to the allowance of a proof of claim or interest including the time and method of initiating such objection;

(70) Kind of notice, form of hearing, and general procedure for determining the amount of a disputed, contingent, or unliquidated claim or interest allowance of which has been objected to; ...

(79) Procedure for determination of secured status including time for determining such status, method of valuation to be used, and who may apply to determine such status; ...

Thus, to interpret Bankruptcy Rule 3002(c) as not fixing a bar date for a creditor to file a proof of a secured claim would amount to a charge of "omission of duty" to the bankruptcy rules committee, notwithstanding that subdivision (a) of the rule was redrafted so as to refer to an "unsecured" creditor. If the bar date in subdivision (c) of the rule applied only to unsecured claims, the language presumably would have been that "proof of an unsecured claim shall be filed within ..." rather than that used: "[i]n a chapter 7 liquidation or chapter 13 individual debt adjustment case, a proof of claim shall be filed within...." Given the background of present chapter 13 and Bankruptcy Rule 3002 and the language of the statute and

of the rule, it must be said that it was congressional intent for proofs of secured claims to be filed and allowed and for plans to provide minimum or better treatment of such "allowed secured claims," as § 1325(a)(5) requires.

Now, what about the creditor's insistence that § 506(d) gives it the right to foreclose its security interest in the debtors' home, because it did not timely file a proof of its claim and its claim, therefore, is not an "allowed secured claim," covered by the provisions of § 1325(a)(5)? It was earlier indicated that the provisions of § 506(d) do not raise an issue in this case and that it has been construed with more sanctimonious regard than reason.

In the first place, the congressional sentiment that § 506(d) "permits liens to pass through the bankruptcy case unaffected" is not a statement that liens will pass through unaffected. It means that their being unaffected is possible, not that they will be unaffected. Proof of this statement is found in the next word "[h]owever" used in the congressional explanation of the statute, which goes on to point out when a lien does not pass through unaffected. As earlier indicated, § 506(d) operates in the general field of the filing, allowance, and disallowance of proofs of claim. It has a general provision which declares void any lien which does not secure an "allowed secured claim." It then makes an exception for the lien which secures a debt which is not an "allowed secured claim" only because no proof of the debt was filed in the bankruptcy case, but the debtors here do not make any contention that SouthTrust's lien is void because it did not timely file a proof of its debt.

What these debtors contend—and the Court agrees—is that SouthTrust is bound by the terms of the debtors' confirmed chapter 13 plan, as stated in the provisions of § 1327(a). Those terms provided that the allowed claims (secured and unsecured) of their creditors would be paid in full by the standing chapter 13 trustee by means of the debtors' regular stream of specified

---

**23.** At p. 293.

payments to the trustee. For the creditor to seek some other means of satisfaction of the debt secured by the debtors' mobile home is contrary to the terms of the confirmed chapter 13 plan. If SouthTrust has a right to go its own way and foreclose upon their home, then the creditor is for some reason not bound by the confirmed plan. Logically, that may be so only if the provisions of § 1327(a) do not bind this creditor to seek satisfaction of its secured debt by timely filing a proof of claim for allowance and for its payment by the trustee, as the terms of the plan provide for it to be paid. Of necessity, such a nonfiling creditor must prevent the confirmation of such a plan to avoid SouthTrust's predicament. The creditor must object to confirmation of the plan in the bankruptcy court and, if unsuccessful there, must timely prosecute an appeal. Even so-called "secured creditors" may not sleep upon their rights and expect to awaken to the full enjoyment of them.

Apparently, SouthTrust takes the position that § 506(d) prevents its being subject to the provisions of § 1327(a), which makes the confirmed plan binding on the debtor and on each creditor (even if the plan had not provided for the claim of such creditor). In this alleged conflict between the provisions of § 506(d) and § 1327(a), it apparently is contended that the legislative statement about § 506(d) makes it controlling. The creditor's position that such a conflict exists is rejected by the Court. Even if the supposed conflict were accepted as fact, the established rules of statutory construction are against the creditor's contention. "Where there is inescapable conflict between general and specific terms or provisions of a statute, the specific will prevail." [24] Here, § 506(d) contains the general provisions and § 1327 contains the specific provisions governing matters in this case. Section 103(a) of the bankruptcy statute makes § 506(d) applicable in a case under chapter 7, 11, 12, or 13; whereas, subsection (h) makes § 1327 applicable only in a chapter 13 case. Section 506(d) provides a general rule (and the exception) that a lien securing a debt which is not an allowed secured claim is void, but § 1327 provides for the specific effects of confirmation of a plan only in a chapter 13 case.

More to the point here, the claimed triumph of § 506(d) over § 1327 is a fantasy because there is no conflict between the provisions of these two parts of the bankruptcy statute. Besides, if there were a conflict, it would be between § 506(d) and subsection (c), not (a), of § 1327, for the lien-voidance provisions of § 1327 are in subsection (c). Subsection (c), however, is not involved in this case at this point. Subsection (c), for its operative effect of voiding liens, depends upon subsection (b), which provides for the vesting of estate property in a chapter 13 debtor. Subsection (b) has no application to this case at its present stage. The debtors have not been granted a discharge, and the wording of the order confirming their chapter 13 plan was that property of the estate not vest in them until an order of discharge has been entered or the case dismissed. The vesting in the debtors has been suspended by the confirmation order and subsection (c) has not sprung into operation for any lien-avoiding effect that it may have in regard to SouthTrust. Even if that had occurred, there would not exist a conflict between § 506(d) and § 1327(c). Section 506(d) deals with the general proposition that a lien upon the debtor's property is void if it does not secure a debt which is an "allowed secured claim," but not when the only reason is that no proof of the claim was filed. Without any conflict with that general proposition for all chapter 7, 11, 12, *and* 13 cases, § 1327 specifies the effects of confirmation of a debtor's plan in a chapter 13 case. It has nothing to say about the allowance of claims or the general effect on a lien related to a debt which is not an "allowed secured claim." It does not purport to deal with the consequences to a lienholder from not timely filing a proof of claim in the chapter 13 case. Section 1327

---

**24.** 2A Sutherland Statutory Construction 92 (Sands 4th Edition—N. Singer ed. 1984); *In re* *Brown,* 329 F.Supp. 422 (S.D.Ia.1971).

does provide that confirmation of a chapter 13 plan (a) makes its terms binding on the debtor and all creditors and, unless the plan or confirmation order provides otherwise, (b) vests the estate property in the debtor and (c) provides that the vesting property "is free and clear of any claim or interest of any creditor provided for by the plan." Each of these sections has its separate purpose and field of operation, and no conflict between them exists, but it would be beyond the issues now presented to the Court for it to attempt here to lay out the effect of subsections (b) and (c) of § 1327 upon the rights of the parties as they now or hereafter may appear.

The creditor's argument boils down to a contention that by not having timely filed a proof of its claim, it has avoided becoming a participant in this bankruptcy case and has avoided the consequences provided by Congress for willing or unwilling participants in such a case. The almost total ineffectiveness of the exercise by Congress of its bankruptcy powers under Article I of the Constitution can hardly be imagined if a creditor may simply opt out of a bankruptcy case. This creditor seeks to do so by using § 506(d) as a talisman, but despite the reverent regard often accorded that section this feat of magic is far beyond its powers. SouthTrust claims to believe that the only obstacle to its intended seizure of the debtors' home has been removed by the expiration or termination of the automatic stay provided by § 362(a), but that event is of no more significance than the expiration of any other stay or injunction which by its terms has expired.

The fact is that SouthTrust is as bound by the confirmed plan of the Thomases as a defendant is bound by a default judgment after expiration of the time for appeal. *See Republic Supply Co. v. Shoaf,* 815 F.2d 1046 (5th Cir.1987). It is not the stay once provided in this case by § 362(a) which determines this proceeding, it is the confirmed plan which is res judicata of the rights of the parties and which stands in the creditor's way in its efforts to seize the debtors' mobile home.

SouthTrust does not purport to address any problem which its position encounters with the provisions of 11 U.S.C. § 1306(b):

> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Because of the consumer-debt character of most chapter 13 cases, this is a provision that the debtor remain in possession, notwithstanding that a trustee has been appointed.[25] The statutory rule, by its terms, is without limitation unless an exception is stated in "a confirmed plan" or in an "order confirming a plan." No exception is present in this case.[26] That the debtors' mobile home is property of the estate in this case can not be seriously questioned.[27] Here, there was no equity in the mobile home to be claimed as "exempt from property of the estate," as might otherwise have been done under the provisions of bankruptcy statute § 522(b).[28] "Except as provided in subsections (d), (e), and (f)," section 362(c) provides that "the stay of an act against property of the estate ... continues until such property is no longer property of the estate." Nothing, however, is said concerning a cessation of the status of the property as "property of the estate." Thus, with the stay lifted or terminated as to SouthTrust and the mobile home, the latter remains property of the estate and § 1306(b) commands that "the debtor shall remain in possession of all property of the estate." Whether a creditor, with the stay lifted and nothing more involved, could proceed to foreclose upon the property and, thereby, terminate its status as "property of the estate" and then, notwithstanding the provisions of § 1306(b), divest the debtor of possession of the property is beyond the issue to be determined here. SouthTrust has not foreclosed upon or sold the mobile home but

---

**25.** In 11 U.S.C. § 323, the role of the trustee in a case is stated to be the representative of the estate."

**26.** Finding of fact 11.

**27.** 11 U.S.C. §§ 1306(a) and 541.

**28.** 11 U.S.C. § 522(b).

has instituted a "detinue suit" for recovery of possession from the debtors. As far as the Court can determine the mobile home is "property of the estate" and the creditor's civil action runs counter to the command of § 1306(b) that the debtors remain in possession of this piece of "property of the estate." In the present case, of course, an immovable barrier to SouthTrust's "detinue suit" is the binding effect of the debtors' confirmed plan, as provided by § 1327(a). As long as the plan stands confirmed, SouthTrust must stand enjoined.

A final judgment for an injunction to halt the harassment of the debtors by South-Trust's effort to recover the mobile home will be entered but conditioned on the debtors' continuing to carry out the confirmed plan. The debtors' claim for damages is a separate issue not yet presented to the Court, and that aspect of the case will now be proceeded with.